IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1120

 Filed: 18 July 2017

New Hanover County, No. 13 CRS 57210

STATE OF NORTH CAROLINA

 v.

DARIUS TERRELL HESTER

 Appeal by defendant from judgment entered 1 April 2016 by Judge Phyllis M.

Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 20

April 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L.
 VandenBerg, for defendant-appellant.

 TYSON, Judge.

 Darius Terrell Hester (“Defendant”) appeals from his conviction of felonious

possession of a stolen firearm following the trial court’s denial of his motion to

suppress. Due to Defendant’s failure to object at trial, this issue is properly before us

solely upon plain error review. Defendant has failed to carry his burden to show error

or plain error in the jury’s verdict or the judgment entered thereon.

 I. Background
 STATE V. HESTER

 Opinion of the Court

 New Hanover County Sheriff’s Deputy Joshua Cranford was familiar with the

Rockhill Road area in Wilmington, as he regularly patrolled that area as part of his

patrol route. He described the area as having a history of criminal gang and drug

activity. Deputy Cranford testified a recent home invasion had occurred in the area

and numerous “break-ins” in the past. He had personally made one arrest for home

invasion. He was unable to specifically recall making any arrests for breaking and

entering or drug activity in the area. Deputy Cranford testified that officers generally

share information with each other about areas where criminal activity is afoot and

crimes are committed.

 New Hanover County Sheriff’s Detective Kenneth Murphy had served as a law

enforcement officer for seventeen years. He also testified about criminal activity in

the Rockhill Road area. Three homicides occurred in the neighborhood between 1999

and 2003. Detective Murphy testified the area was “known for” breaking and

entering, drug activity, and drive-by shootings. He was unaware of when the most

recent breaking and entering crimes had occurred prior to 16 August 2013.

 At around 10:30 a.m. on Friday, 16 August 2013, Deputy Cranford was

patrolling the area in his marked patrol car and turned onto Rockhill Road. He was

unaware of whether any crimes had been committed in the area that morning or the

previous night. After driving approximately one-half mile on Rockhill Road, Deputy

Cranford noticed a car was pulled over toward the side of the road, but was partially

 -2-
 STATE V. HESTER

 Opinion of the Court

parked on the travel lane of the roadway. He initially believed the car might be

disabled. As Deputy Cranford’s marked patrol car approached the front of the parked

vehicle and came within fifty yards of the vehicle, it moved and the driver drove away

“in a normal fashion.”

 When the car pulled away, Deputy Cranford “saw [Defendant] walk away from

the vehicle and cross the road in front of [him] and continue up Rockhill Road in the

opposite direction.” Deputy Cranford did not know whether Defendant had gotten

out of the car or had been speaking with anyone inside the car.

 Deputy Cranford also testified he believed the car had pulled away and

Defendant had crossed the road in reaction to his arrival and presence. He further

testified he did not know “if [Defendant] was lost,” or whether a drug deal had just

occurred. He believed Defendant may have been dropped off on the road in order to

break into people’s homes.

 Deputy Cranford testified he “wanted to get outside and investigate and make

sure everything was okay,” because of the “area that we were in” and the fact that

Defendant walked from the car and the car pulled away as he approached. Deputy

Cranford turned his vehicle around, activated his blue lights, and stopped Defendant.

 Deputy Cranford exited his patrol car and asked Defendant whether he

possessed any drugs or weapons. Defendant responded that he did not. Deputy

Cranford asked Defendant for identification. Defendant did not possess a photo

 -3-
 STATE V. HESTER

 Opinion of the Court

identification, but gave Deputy Cranford his name and date of birth. Defendant was

initially polite and cooperative. He asked Deputy Cranford if he had done anything

wrong. Deputy Cranford responded that he had not done anything wrong.

 Deputy Cranford asked Defendant to remain at the front of his patrol car while

he sat inside his patrol car. Deputy Cranford contacted the Sheriff’s dispatcher to

determine whether Defendant had any outstanding arrest warrants.

 Defendant walked from the front of the patrol car to the driver’s side and “stood

[at] the entrance of the car door,” which made Deputy Cranford “uncomfortable.”

Deputy Cranford instructed Defendant to return to the front of the patrol car.

Moments later, Defendant “tried to do the same thing again.” At that point, Deputy

Cranford exited his patrol car, stood at the front of the car with Defendant, and

awaited a response from the Sheriff’s dispatcher. The Sheriff’s dispatcher informed

Deputy Cranford that Defendant had no outstanding warrants, but that he was

“known to carry” a concealed weapon based upon a prior charge for carrying a

concealed weapon.

 Deputy Cranford again asked Defendant whether he possessed a weapon.

Defendant lied and responded that he did not. At that point, Deputy Cranford

observed a slight bulge under Defendant’s shirt. Defendant became confrontational

when Deputy Cranford asked him to lift his shirt. Defendant lifted his shirt and

pulled a handgun from his waistband. Deputy Cranford testified that Defendant

 -4-
 STATE V. HESTER

 Opinion of the Court

pointed the gun at him and pulled the trigger. He heard the hammer click, but the

weapon did not discharge.

 Deputy Cranford testified he backed up and drew his weapon. He began to fire

shots at Defendant, who fled while still carrying his handgun. Deputy Cranford

chased Defendant down a dirt path and lost sight of him as Defendant rounded a

corner. Deputy Cranford turned the corner and saw Defendant lying on the ground.

Defendant had been shot in the shoulder. Defendant told Deputy Cranford he had

dropped his gun. Deputy Cranford placed Defendant under arrest.

 Deputy Cranford recovered Defendant’s handgun in the dirt path about twenty

yards away. The recovered gun was found to be loaded with a full clip and it had

been reported as stolen from a home in Wilmington in 2013. At trial, Defendant

testified he had bought the gun “from off the streets” and that he knew such guns

were typically stolen.

 Defendant was indicted and tried on the charges of attempted murder and

possession of a stolen firearm. Defendant testified he did not point the gun at Deputy

Cranford or pull the trigger. He stated he was attempting to hand Deputy Cranford

the gun, with the barrel pointed toward the ground.

 Defendant testified Deputy Cranford reacted with shock and reached for his

weapon. Defendant ran. He stated he was holding the handgun when he ran, but

threw it prior to being shot. Defendant was acquitted of the attempted murder

 -5-
 STATE V. HESTER

 Opinion of the Court

charge. The jury found him to be guilty of possession of a stolen firearm. Defendant

appeals.

 II. Jurisdiction

 Jurisdiction lies in this Court from final judgment of the superior court entered

upon the jury’s verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a)

(2015).

 III. Standard of Review and Defendant’s Preservation of Error

 “The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.” State v. Biber, 365 N.C. 162, 167-

68, 712 S.E.2d 874, 878 (2011) (citing State v. Brooks, 337 N.C. 132, 140-41, 446

S.E.2d 579, 585 (1994)).

 Defendant’s motion to suppress was heard prior to trial. The trial court denied

the motion immediately following the presentation of evidence and arguments of

counsel. Defendant concedes defense counsel failed to object when the evidence

resulting from the stop, and particularly the stolen handgun, was offered at trial. The

admission of the handgun evidence must be reviewed for plain error. State v. Golphin,

352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000) (holding a motion in limine is

insufficient “to preserve for appeal the question of admissibility of evidence if the

 -6-
 STATE V. HESTER

 Opinion of the Court

defendant did not object to the evidence at the time it was offered at trial”), cert.

denied, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

 At trial, Defendant failed to object to numerous references to his possession of

the stolen handgun, or to object to the tender and admission of the handgun into

evidence. During his testimony, Defendant acknowledged he had purchased and

possessed the stolen handgun, but denied pointing it at Deputy Cranford or pulling

the trigger.

 The State argues Defendant elicited the same evidence and testified at trial,

and is not entitled to plain error review, because he invited the error. See N.C. Gen.

Stat. § 15A-1443(c) (2015) (“A defendant is not prejudiced by the granting of relief

which he has sought or by error resulting from his own conduct.”). The State cites

State v. Gobal, 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007), aff’d per curiam,

362 N.C. 342, 661 S.E.2d 732 (2008) (“Statements elicited by a defendant on cross-

examination are, even if error, invited error, by which a defendant cannot be

prejudiced as a matter of law.”).

 Once the trial court denied Defendant’s motion to suppress based upon lack of

reasonable suspicion for the stop, Defendant was required to defend against the

charges of attempted murder and felonious possession of a stolen firearm. He

defended the charges by testifying about the circumstances surrounding his

 -7-
 STATE V. HESTER

 Opinion of the Court

possession of the stolen handgun. This testimony was subject to cross-examination

by the State.

 While defending against the attempted murder charge, Defendant testified to

explain his actions of surrendering the weapon and stated he did not point or fire his

gun at Deputy Cranford. A defendant does not waive an objection to evidence by

seeking “to explain, impeach or destroy its value.” State v. Badgett, 361 N.C. 234, 246,

644 S.E.2d 206, 213 (citation omitted), cert. denied, 552 U.S. 977, 169 L. Ed. 2d 351

(2007). Defendant’s appeal from the denial of his motion to suppress is properly

before us on plain error review, and not invited error. See id.

 “Under the plain error rule, defendant must convince this Court not only that

there was error, but that absent the error, the jury probably would have reached a

different result.” State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)

(citation omitted). This burden rests upon Defendant. See id.

 IV. Denial of Defendant’s Motion to Suppress

 Defendant’s sole argument on appeal asserts the trial court erred by denying

his motion to suppress the evidence obtained from the stop. Defendant argues Deputy

Cranford did not possess a reasonable suspicion that he was involved in criminal

activity when Deputy Cranford initially stopped and questioned him.

 A. Fourth Amendment Protections

 -8-
 STATE V. HESTER

 Opinion of the Court

 The United States and North Carolina Constitutions protect against

unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20.

The protections of the Fourth Amendment apply “to seizures of the person, including

brief investigatory detentions.” State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67,

69-70 (1994) (citing Reid v. Georgia, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893 (1980)).

A “seizure” has occurred under the Fourth Amendment when an officer uses a “show

of authority” to stop a citizen. Florida v. Royer, 460 U.S. 491, 501-02, 75 L. Ed. 2d

229, 239 (1983). “[T]he crucial test [to determine if a person is seized] is whether,

taking into account all of the circumstances surrounding the encounter, the police

conduct would have communicated to a reasonable person that he was not at liberty

to ignore the police presence and go about his business.” Florida v. Bostick, 501 U.S.

429, 437, 115 L. Ed. 2d 389, 400 (1991) (citation and quotation marks omitted).

 Here, Deputy Cranford turned his vehicle around and activated his blue lights

after arrival upon the scene. Defendant stopped walking and voluntarily talked with

Deputy Cranford. Defendant failed to provide a photo identification to the officer, but

provided his name and address. The trial court properly analyzed this encounter as

a stop. The State does not contest that Defendant was seized to implicate the Fourth

Amendment. A reasonable person would not have felt at liberty to ignore Deputy

Cranford’s presence and the use of blue lights on his marked vehicle, and continue to

walk away. See id.

 -9-
 STATE V. HESTER

 Opinion of the Court

 To survive Fourth Amendment scrutiny, an investigatory stop must be

justified by “a reasonable suspicion, based on objective facts, that the individual is

involved in criminal activity.” Brown v. Texas, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362

(1979) (citations omitted). As applied by the Supreme Court of North Carolina: “A

court must consider the totality of the circumstances—the whole picture in

determining whether a reasonable suspicion exists” to justify an officer’s

investigatory stop. State v. Otto, 366 N.C. 134, 138, 726 S.E.2d 824, 828 (2012)

(citation and quotation marks omitted).

 “The stop must be based on specific and articulable facts, as well as the rational

inferences from those facts, as viewed through the eyes of a reasonable, cautious

officer, guided by his experience and training.” Watkins, 337 N.C. at 441-42, 446

S.E.2d at 70 (citing Terry v. Ohio, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968));

State v. Thompson, 296 N.C. 703, 706, 252 S.E.2d 776, 779, cert. denied, 444 U.S. 907,

62 L. Ed. 2d 143 (1979). “The only requirement is a minimal level of objective

justification, something more than an ‘unparticularized suspicion or hunch.’”

Watkins, 337 N.C. at 442, 446 S.E.2d at 70 (quoting U.S. v. Sokolow, 490 U.S. 1, 7,

104 L. Ed. 2d 1, 10, (1989)).

 At the conclusion of the suppression hearing, the trial court recited the

evidence presented, as detailed above, and stated:

 The Court concludes as a matter of law that the Court
 takes into consideration the officer’s personal observations

 - 10 -
 STATE V. HESTER

 Opinion of the Court

 at the time that he observed a vehicle and the defendant
 on Rockhill Road, that it was – that it is a high crime area
 where several breaking and enterings, drug activity, and
 drive-by shootings have occurred in the past; and that
 Deputy Cranford did not have all this information himself
 as he had not himself made several arrests for breaking
 and enterings or the activity in that area, that the officers
 shared this information and that Deputy Cranford would
 receive updates of information about the area in which he
 was patrolling on a regular basis when he was on duty.

 Therefore, the Court does find that the officer did have
 reasonable suspicion to believe that a crime was being
 committed at the time that he stopped the defendant on
 Rockhill Road. Therefore, the Court is going to deny the
 motion to suppress the evidence.

 C. Intervening Circumstance

 Even if this Court were to accept Defendant’s argument that Deputy

Cranford’s initial stop of Defendant was not based upon a reasonable suspicion that

Defendant was involved in criminal activity, the trial court’s ultimate ruling on

Defendant’s motion to suppress to allow admission of the stolen handgun is properly

upheld.

 Viewed in the light most favorable to the State and under plain error review,

evidence presented to the trial court at the hearing on Defendant’s motion to suppress

showed the recovered stolen handgun and all evidence related to the stolen handgun

were obtained after Defendant’s commission of a separate crime: pointing a loaded,

stolen gun at Deputy Cranford and pulling the trigger. At the suppression hearing,

 - 11 -
 STATE V. HESTER

 Opinion of the Court

the trial court expressly found Defendant pointed the gun at the officer and pulled

the trigger.

 Evidence discovered as a result of an illegal search or seizure is generally

excluded at trial. See Wong Sun v. United States, 371 U.S. 471, 487-88, 9 L. Ed. 2d

441, 455 (1963). “[T]he exclusionary rule encompasses both the ‘primary evidence

obtained as a direct result of an illegal search or seizure and, relevant here, evidence

later discovered and found to be derivative of an illegality,’ the so-called ‘fruit of the

poisonous tree.’” Utah v. Strieff, __ U.S. __, __, 195 L. Ed. 2d 400, 407 (2016) (quoting

Segura v. United States, 468 U.S. 796, 804, 82 L. Ed. 2d 599, 608 (1984)). However,

 [w]e need not hold that all evidence is fruit of the poisonous
 tree simply because it would not have come to light but for
 the illegal actions of the police. Rather, the more apt
 question in such a case is whether, granting establishment
 of the primary illegality, the evidence to which instant
 objection is made has been come at by exploitation of that
 illegality or instead by means sufficiently distinguishable
 to be purged of the primary taint.

Wong Sun, 371 U.S. at 487-88, 9 L. Ed. 2d at 455 (citation and quotation marks

omitted) (emphasis supplied). The Supreme Court of the United States has deemed

the exclusionary rule “‘applicable only . . . where its deterrence benefits outweigh its

substantial social costs.’” Strieff, __ U.S. at __, 195 L. Ed. 2d at 407 (quoting Hudson

v. Michigan, 547 U. S. 586, 591, 165 L. Ed. 2d 56 (2006)).

 - 12 -
 STATE V. HESTER

 Opinion of the Court

 “Suppression of evidence has always been our last resort, not our first

impulse.” Id. (ellipsis and citation omitted). Guided by these principles, the Supreme

Court of the United States has recognized several exceptions to the exclusionary rule.

 First, the independent source doctrine allows trial courts
 to admit evidence obtained in an unlawful search if officers
 independently acquired it from a separate, independent
 source. Second, the inevitable discovery doctrine allows for
 the admission of evidence that would have been discovered
 even without the unconstitutional source. Third, and at
 issue here, is the attenuation doctrine: Evidence is
 admissible when the connection between unconstitutional
 police conduct and the evidence is remote or has been
 interrupted by some intervening circumstance, so that the
 interest protected by the constitutional guarantee that has
 been violated would not be served by suppression of the
 evidence obtained.

Id. (internal citations and quotation marks omitted) (emphasis supplied). We address

the third exception, and hold the State presented a sufficient intervening event to

break any causal chain between the presumably unlawful stop and the discovery of

the stolen handgun. See id.

 This Court can conceive only in the most rare instances “where [the] deterrence

benefits” of police conduct to suppress a firearm “outweigh[s] its substantial social

costs” of preventing a defendant from carrying a concealed, loaded, and stolen

firearm, pulling it at an identified law enforcement officer and pulling the trigger.

See Hudson, 547 U. S. at 591, 165 L. Ed. 2d at 64 (citation and quotation marks

omitted).

 - 13 -
 STATE V. HESTER

 Opinion of the Court

 1. Preservation

 We initially address the dissenting opinion’s notion that the State’s

“attenuation doctrine” argument must be dismissed, because the State failed to

present that specific argument to the trial court during the hearing on Defendant’s

motion to suppress.

 Defendant argued before the trial court that Deputy Cranford stopped him

without reasonable suspicion of criminal activity, and Deputy Cranford’s order to

Defendant to lift his shirt, which revealed the handgun, constituted an unlawful

search. Our review of the transcript of the hearing and record shows the State did

not use the words “intervening circumstance” or “attenuation,” and argued to the trial

court that Deputy Cranford had reasonable suspicion to stop Defendant. The trial

court denied Defendant’s motion to dismiss on the basis that Deputy Cranford

possessed reasonable suspicion to stop Defendant.

 We are bound by precedents to conclude this issue is properly before us. It is

well-settled in North Carolina that “[t]he question for review is whether the ruling of

the trial court was correct and not whether the reason given therefor is sound or

tenable. The crucial inquiry for this Court is admissibility and whether the ultimate

ruling was supported by the evidence.” State v. Bone, 354 N.C. 1, 8, 550 S.E.2d 482,

486 (2001) (quoting State v. Austin, 320 N.C. 276, 290, 357 S.E.2d 641, 650, cert.

denied, 484 U.S. 916, 98 L. Ed. 2d 224 (1987)) (emphasis supplied).

 - 14 -
 STATE V. HESTER

 Opinion of the Court

 “‘[A] correct decision of a lower court will not be disturbed because a wrong or

insufficient or superfluous reason is assigned.’” State v. Dewalt, 190 N.C. App. 158,

165, 660 S.E.2d 111, 116 (quoting State v. Blackwell, 246 N.C. 642, 644, 99 S.E.2d

867, 869 (1957)), disc. review denied, 362 N.C. 684, 670 S.E.2d 906 (2008).

 The burden on appeal rests upon Defendant to show the trial court’s ruling is

incorrect. See State v. Herring, 322 N.C. 733, 749, 370 S.E.2d 363, 373 (1988). The

occurrence of an intervening event, which purges the taint of an illegal stop, becomes

an issue only if the court finds the underlying illegality.

 The intervening event does not present an arguable issue until the trial court

determines the defendant sustained his burden of persuasion on the illegality of the

police conduct. While the State could have requested the trial court’s consideration

of the attenuation issue as an alternative basis to admit the handgun, the State’s

failure to raise the attenuation issue at the hearing does not compel nor permit this

Court to summarily exclude the possibility that the trial court’s ruling was correct

under this or some other doctrine or rationale. See Bone, 354 N.C. at 8, 550 S.E.2d at

486; Blackwell, 246 N.C. at 644, 99 S.E.2d at 869.

 The dissenting opinion notes the well-established trot that “the law does not

permit parties to swap horses between courts in order to get a better mount.” Weil v.

Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934); State v. Hunter, 305 N.C. 106, 112,

286 S.E.2d 535, 539 (1982). However, those cases an all other cited only apply to

 - 15 -
 STATE V. HESTER

 Opinion of the Court

instances where the party, whether Plaintiff, Defendant, or the State, is carrying the

burden on appeal to show error in the lower court’s ruling on appeal, and relies upon

a theory not presented before the lower court.

 That circumstance is not before us here. We review the trial court’s ultimate

ruling for error, prejudice, and, in this case, solely for plain error. This Court is free

to and may uphold the trial court’s “ultimate ruling” based upon a theory not

presented below or even argued here. See Bone, 354 N.C. at 8, 550 S.E.2d at 486.

 Our precedents clearly allow the party seeking to uphold the trial court’s

presumed-to-be-correct and “ultimate ruling” to, in fact, choose and run any horse to

race on appeal to sustain the legally correct conclusion of the order appealed from.

See id.; Austin, 320 N.C. at 290, 357 S.E.2d at 650; Blackwell, 246 N.C. at 644, 99

S.E.2d at 869.

 The dissenting opinion relies upon this Court’s decision in State v. Gentile, 237

N.C. App. 304, 766 S.E.2d 349 (2014). Gentile is easily distinguishable from the

circumstances presented here. In Gentile, the State sought to overturn the trial

court’s ruling, which granted the defendant’s motion to suppress. This Court did not

allow the State, who bore the burden on appeal to show error in the trial court’s

presumably correct ruling, to “swap horses” on appeal. Id. at 310, 766 S.E.2d at 353-

54. For the same reason, this Court routinely dismisses arguments advanced by

 - 16 -
 STATE V. HESTER

 Opinion of the Court

defendants in criminal cases when the defendants attempt to mount and ride a

stronger or better, and possibly prevailing steed not run before the trial court.

 Rule 10 of our Rules of Appellate Procedure governs the preservation of issues

during trial proceedings. N.C. R. App. P. 10. Our conclusion that the trial court did

not commit plain error to allow into evidence the stolen and loaded handgun does not

change, even if we were to presume the State failed to preserve the attenuation issue

for our review. Alternatively, we rule to invoke Rule 2 in this case to suspend the

dissent’s alleged requirements of Rule 10 to allow us to consider the State’s

attenuation argument.

 To prevent manifest injustice to a party, or to expedite
 decision in the public interest, either court of the appellate
 division may, except as otherwise expressly provided by
 these rules, suspend or vary the requirements or provisions
 of any of these rules in a case pending before it upon
 application of a party or upon its own initiative, and may
 order proceedings in accordance with its directions.

N.C. R. App. P. 2.

 This matter involves “exceptional circumstances [and] significant issues of

importance in the public interest,” the firing of a stolen and loaded weapon upon a

police officer by a private citizen illegally carrying a weapon. Defendant was not

prejudiced by the State’s failure to make the attenuation argument below. The State

presented evidence at the suppression hearing that Defendant fired upon the officer,

which Defendant had the opportunity to rebut.

 - 17 -
 STATE V. HESTER

 Opinion of the Court

 The trial court specifically found that Defendant attempted to fire at the officer

when it rendered its ruling on Defendant’s motion to suppress. Further, we note

Defendant argues denial of his suppression motion on appeal, under plain error

review, even though he failed to properly preserve his objection when the evidence

was introduced and commented on multiple times at trial. Even if the State failed to

properly preserve the attenuation argument in the trial court for our review, the

circumstances in this case alternatively compel us to invoke Rule 2 and also review

the merits of the State’s arguments to uphold the trial court’s ultimate ruling in its

order. This issue is properly before us.

 2. Commission of a Crime

 To determine whether an intervening event is sufficient to break “the causal

chain between the unlawful stop and the discovery of the [evidence],” the Supreme

Court of the United States has delineated the following three factors: (1) “the

temporal proximity between the unconstitutional conduct and the discovery of

evidence to determine how closely the discovery of evidence followed the

unconstitutional search;” (2) “the presence of intervening circumstances;” and (3) “the

purpose and flagrancy of the official misconduct.” Strieff, __ U.S. at __, 195 L. Ed. 2d

at 408 (emphasis supplied). “In evaluating these factors, we assume without deciding

. . . that [the officer] lacked reasonable suspicion to initially stop [the defendant].” Id.

 - 18 -
 STATE V. HESTER

 Opinion of the Court

 Here, the evidence presented in the light most favorable to the State at the

suppression hearing showed after Deputy Cranford was warned Defendant might be

carrying a concealed weapon, noticed a bulge in Defendant’s waist, and asked

Defendant to lift his shirt, Defendant responded by: (1) raising his shirt; (2) pulling

a loaded and stolen handgun from his waistband; (3) pointing the gun at Deputy

Cranford; and (4) pulling the trigger.

 Deputy Cranford testified the handgun failed to discharge when Defendant

pulled the trigger. Deputy Cranford’s testimony that Defendant committed the

independent criminal act in the presence of the officer breaks the causal chain

between the unconstitutional stop and the discovery of the evidence.

 The facts of this case are directly on point with the United States Court of

Appeals for the Fourth Circuit’s decision in State v. Sprinkle, 106 F.3d 613 (4th Cir.

1997). In Sprinkle, the officers conducted an investigatory stop of the defendant

without reasonable suspicion of criminal activity. Id. at 618-19. While an officer was

performing a pat-down of the defendant, the defendant began to run with the officer

in pursuit. Id. at 616. The defendant pulled a handgun from the front of his pants

and continued to run with his gun still drawn and fired one shot toward the officer.

Id.

 The Court explained: “If a suspect’s response to an illegal stop ‘is itself a new,

distinct crime, then the police constitutionally may arrest the [suspect] for that

 - 19 -
 STATE V. HESTER

 Opinion of the Court

crime.’” Id. at 619 (quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir.

1982)). “Because the arrest for the new, distinct crime is lawful, evidence seized in a

search incident to that lawful arrest is admissible.” Id. (citing Bailey at 1018).

 Our federal courts have explained the reasons for holding that a new and

distinct crime, following an arguably illegal stop or search of the defendant, is a

sufficient intervening event to provide an independent basis for an arrest and/or the

admissibility of evidence uncovered during a search incident to that arrest.

 (1) “a contrary rule would virtually immunize a defendant
 from prosecution for all crimes he might commit that have
 a sufficient causal connection to the police misconduct[,]”
 Bailey, 691 F.2d at 1017-18; (2) the exclusionary rule does
 not extend so far as to require suppression when the
 discovery of the evidence can be traced to the separate
 offense, see, e.g., Waupekenay, 973 F.2d at 1538; and (3) to
 hold otherwise would encourage persons to resist the police
 and create potentially violent and dangerous
 confrontations. Id. Challenges to even unconstitutional
 police searches must be made in the courts, not on the
 street.

United States v. Crump, 62 F. Supp. 2d 560, 568 (D. Conn. 1999).

 Like in Sprinkle, when Defendant “drew and fired his gun at [Deputy

Cranford], he committed a new crime that was distinct from any crime he might have

been suspected of at the time of the initial stop.” Sprinkle, 106 F.3d at 619. Deputy

Cranford had probable cause to arrest Defendant “because the new crime purged the

taint of the prior illegal stop[,] [a]nd the gun, which was in plain view at the scene of

the new crime, could be legitimately seized.” Id. at 619-20.

 - 20 -
 STATE V. HESTER

 Opinion of the Court

 Although Defendant’s commission of a separate and distinct criminal offense

is alone sufficient as an “intervening circumstance” to purge the taint of the presumed

illegal stop, we note the third factor set forth in Strieff also favors attenuation. “The

exclusionary rule exists to deter police misconduct. The third factor of the

attenuation doctrine reflects that rationale by favoring exclusion only when the police

misconduct is most in need of deterrence—that is, when it is purposeful or flagrant.”

Strieff, __ U.S. at __, 195 L. Ed. 2d at 409.

 Here, Deputy Cranford explained that he and other officers knew Rockhill

Road to be a high crime area; while patrolling the area he turned onto Rockhill Road

and saw a vehicle parked partially onto the roadway; the vehicle drove away as

Deputy Cranford approached; Defendant “walk[ed] away from the vehicle;” Deputy

Cranford believed the car drove off and Defendant started to walk away in reaction

to his presence; and he decided to investigate “to make sure everything was okay”

due to the “area we were in.”

 Like in Strieff, there was no indication that the stop of Defendant “was part of

any systemic or recurrent police misconduct.” Id. at __, 195 L. Ed. 2d 410. Even if the

initial stop was unjustified and unsupported by reasonable suspicion, it does not “rise

to a purposeful or flagrant violation of [Defendant’s] Fourth Amendment rights.” Id.

at __, 195 L. Ed. 2d at 410. The trial court’s ultimate conclusion to allow admission

of the recovered, stolen, and loaded weapon was proper, and more so under plain error

 - 21 -
 STATE V. HESTER

 Opinion of the Court

review, where Defendant failed to object to the admission of, or testimony concerning,

the handgun. Defendant has failed to carry his burden to exclude this evidence under

plain error review or the reverse the jury’s conviction.

 V. Conclusion

 The evidence of the stolen handgun was admissible because the presumably

unlawful stop was sufficiently attenuated by Defendant’s intervening commission of

a separate and distinct criminal offense of concealing and pointing a stolen and

loaded gun at Deputy Cranford and pulling the trigger. These events “broke the

causal chain between the [presumed] unconstitutional stop and the discovery of

evidence.” Id.

 This issue is properly before us on plain error review of the trial court’s

“ultimate ruling” and conclusion to deny Defendant’s motion to suppress. See Bone,

354 N.C. at 8, 550 S.E.2d at 486 (stating this Court determines “admissibility and

whether the ultimate ruling was supported by the evidence” (emphasis supplied)).

Furthermore, as was true in Strieff, “there is no evidence that [the] stop reflected

flagrantly unlawful police misconduct.” Id.

 The trial court properly denied Defendant’s motion to suppress. Defendant has

failed in his burden to show error, much less plain error, in the trial court’s ultimate

ruling to allow the testimony concerning and the weapon itself to be admitted. It is

so ordered.

 - 22 -
 STATE V. HESTER

 Opinion of the Court

NO PLAIN ERROR.

Judge DILLON concurs with separate opinion.

Chief Judge McGEE dissents with separate opinion.

 -2-
 No. COA16-1120 – STATE v. HESTER

 DILLON, Judge, concurring.

 I concur but write separately to address the dissent’s issue with the State’s

failure to preserve its appellate argument.

 Defendant was convicted of possessing a firearm which was discovered during

a stop. At the suppression hearing below, the State’s sole argument was that the stop

itself was lawful, and, therefore, the firearm was admissible.

 During the suppression hearing, the State also offered evidence, which the trial

court found credible, that during the stop Defendant pulled the concealed firearm,

pointed it at the officer and pulled the trigger. I agree with the majority that this

intervening event makes the gun admissible. Though the State failed to make this

“winning” argument at the suppression hearing, the trial court denied Defendant’s

motion.

 The dissent is based, in large part, on a view that the State, as the appellee,

should be prohibited just like Defendant, as the appellant, from making any legal

argument on appeal that it failed to make at the suppression hearing. Indeed, it is

axiomatic that an appellant cannot “swap horses” by making a new argument on

appeal that was not made before the trial court in order to get a “better mount.” Weil

v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934).

 Rule 10 of our appellate rules allows an appellee to propose “alternative bas[e]s

in law for supporting the judgment” in addition to the basis relied upon by the trial
 STATE V. HESTER

 DILLON, J., concurring

court. However, Rule 10 states that such alternative bases that the appellee desires

to raise on appeal must have been “properly preserved[.]” N.C. R. App. P. 10(c).

 So based on Rule 10 one could argue that the State, as the appellee, should be

limited, just like Defendant-appellant, to the arguments it made at the suppression

hearing. Had the State lost, the State (as the appellant) would be allowed on appeal

to make only the losing argument that it made before the trial court. And, therefore,

the State should not be allowed to make the winning argument in this case simply

because it won at the trial court based on a losing argument. That is, the State did

not “properly preserve” (as required by Rule 10) the winning argument. See Higgins

v. Simmons, 324 N.C. 100, 103, 376 S.E.2d 449, 452 (1989) (“Because a contention not

made in the court below may not be raised for the first time on appeal, the . . .

contention [by the party seeking to raise that issue on appeal] was no properly

presented to the Court of Appeals for review[.]”)

 However, one could argue that an appellate court may consider any basis which

supports the trial court’s correct result, even if the basis was not relied upon by the

trial court or argued by the parties. This view is based on Supreme Court’s

jurisprudence suggesting that our role as an appellate court is simply to determine

whether the trial court got it right based on its findings, even if the reasoning may be

faulty. See, e.g., State v. Bone, 354 N.C. 1, 8, 550 S.E.2d at 482, 486 (2001) (“The

crucial inquiry for this Court is admissibility and whether the ultimate ruling was

 2
 STATE V. HESTER

 DILLON, J., concurring

supported by the evidence.”) And here, the State did present evidence, which the trial

court did find credible, to support the winning argument, namely the trial court found

that Defendant attempted to shoot the officer. Based on this argument, we should

simply affirm the order of the trial court.

 But presuming that Rule 10 does prevent the State from arguing (and our

Court from considering) the “winning” argument, I concur with the majority’s

invocation of Rule 2 to consider the winning argument. I believe that this matter

involves “exceptional circumstance [and] significant issues of importance in the

public interest” and in my discretion, I conclude that the invocation of Rule 2 is

necessary “to prevent injustice.” State v. Campbell, 2017 N.C. LEXIS 400, *6-7 (June

9, 2017). It is a matter of public interest that private citizens illegally carrying

concealed weapons not be excused from assaulting an officer simply because the

officer may have erred in determining that reasonable suspicion existed to justify a

stop, where the officer was not otherwise assaultive in his behavior. I note that

Defendant is not prejudiced by the State’s failure to make the winning argument at

the suppression hearing. Indeed, the State put on evidence at the suppression

hearing that Defendant assaulted the officer during the stop, and Defendant had the

opportunity to rebut the State’s evidence regarding Defendant’s assaultive behavior.

And there is no winning argument which Defendant’s counsel could have made to

 3
 STATE V. HESTER

 DILLON, J., concurring

justify the exclusion of the firearm where it was found that Defendant used it to

assault the officer.

 Therefore, I concur.

 2
 No. COA16-1120 – State v. Hester

 McGEE, Chief Judge, dissenting.

 Defendant asks this Court to reverse the trial court’s denial of his motion to

suppress. Defendant argues Deputy Cranford did not have reasonable suspicion to

stop him when the deputy observed him walking on the side of the road in

Wilmington, North Carolina. Rather than address the sole issue presented by

Defendant in this appeal, the majority and the concurrence choose to reach, and

ultimately credit, a novel legal theory of admissibility advanced by the State that was

never raised or considered in the trial court.

 If the State’s argument had been preserved, I would agree with the majority –

with some reservations, outlined below – that Deputy Cranford’s stop of Defendant

was sufficiently attenuated from the discovery of the firearm under the Supreme

Court of the United States’ holding in Utah v. Strieff, ___ U.S. ___, 195 L. Ed. 2d 400

(2016). However, the State failed to preserve its attenuation argument, and I

respectfully dissent from the majority’s decision to reach and credit that argument.

 The rule the majority crafts is inconsistent with normal rules of preservation.

This Court regularly refuses to consider arguments presented by a criminal

defendant for the first time on appeal, reasoning that the argument has been waived

by the defendant’s failure to first make the argument to the trial court. There is no

reason why this rule should operate differently for the State and, consistent with

binding precedent, I would hold the State’s failure to raise its attenuation argument
 STATE V. HESTER

 McGEE, C.J., dissenting

in the trial court warrants dismissal of that argument here. Deputy Cranford’s stop

of Defendant was unconstitutional, and I would therefore reverse the trial court’s

denial of Defendant’s motion to suppress and vacate his conviction.

 I. Reasonable Suspicion to Stop Defendant

 I first address whether there was a sufficient basis for Deputy Cranford to stop

Defendant. The majority does not consider whether Deputy Cranford’s conduct was

unconstitutional, and instead proceeded directly to a discussion of whether the

unconstitutional stop, if it existed, was attenuated from the discovery of the evidence

the Defendant moved to suppress. However, consideration of the constitutionality of

the stop is useful, since a determination that the stop was lawful would conclude our

inquiry in this case. Also, even if the stop was unlawful, being able to identify

precisely what conduct of Deputy Cranford was unjustified is valuable in the Strieff

attenuation analysis.

 The Fourth Amendment to the United States Constitution protects against

unreasonable searches and seizures. See U.S. CONST. AMEND. IV. The United States

Supreme Court has held that “[a]n investigatory stop is permissible under the Fourth

Amendment if supported by reasonable suspicion.” Ornelas v. United States, 517 U.S.

690, 693, 134 L. Ed. 2d 911, 917 (1996) (citing Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d

889, 88 S. Ct. 1868 (1968)). Reasonable suspicion is “a particularized and objective

 2
 STATE V. HESTER

 McGEE, C.J., dissenting

basis for suspecting the particular person stopped” has violated the law. Navarette

v. California, 572 U.S. ___, ___, 188 L. Ed. 2d 680, 686 (2014).

 As this Court has held,

 the legal evaluation of a police officer’s reasonable
 suspicion determination must be grounded in a pragmatic
 approach. Reasonable suspicion is a nontechnical
 conception that deals with the factual and practical
 considerations of everyday life on which reasonable and
 prudent men, not legal technicians, act. Our nation’s
 highest court has acknowledged that the concept of
 reasonable suspicion is somewhat abstract and has
 deliberately avoided reducing it to a neat set of legal rules.
 As such, common sense and ordinary human experience
 must govern over rigid criteria.

State v. Mangum, ___ N.C. App. ___, ___, 795 S.E.2d 106, 118 (2016) (citations,

quotation marks, and brackets omitted). In order to meet the reasonable suspicion

threshold, “[t]he officer, of course, must be able to articulate something more than an

inchoate and unparticularized suspicion or hunch.” State v. Knudsen, 229 N.C. App.

271, 284, 747 S.E.2d 641, 650 (2013) (quotation omitted). “An officer has reasonable

suspicion if a reasonable, cautious officer, guided by his experience and training,

would believe that criminal activity is afoot based on specific and articulable facts, as

well as the rational inferences from those facts.” State v. Williams, 366 N.C. 110, 116,

726 S.E.2d 161, 167 (2012). As a reviewing court, we “must consider the totality of

the circumstances — the whole picture.” Id.

 In the present case, Deputy Cranford observed Defendant standing on the side

of the road in an area known for high crime. Defendant was talking to an unknown

 3
 STATE V. HESTER

 McGEE, C.J., dissenting

person in a vehicle. Deputy Cranford testified that the vehicle was parked “partially

in the road” with its brake lights engaged. Shortly after Deputy Cranford arrived in

his police cruiser and stopped about twenty-five to fifty yards from the vehicle, the

vehicle drove away at a normal speed and in a normal fashion. Deputy Cranford

believed the driver of the vehicle “recognized [him] as a deputy” and drove off in an

effort to avoid him. Deputy Cranford did not check the license plate of the vehicle,

did not follow the vehicle, and did not know if the driver or any occupants of the

vehicle were involved in any criminal activity. After the vehicle left, Defendant

walked down the road with a cellphone in his hands.

 Deputy Cranford testified he did not know if Defendant had exited the vehicle,

that nothing about Defendant’s appearance drew his attention, and that he did not

know who Defendant was or what Defendant was doing. Deputy Cranford deemed

the vehicle driving away as “suspicious” and testified it was his belief that

Defendant’s walking away “was in reaction to [Deputy Cranford’s] presence as well[.]”

On cross-examination, Deputy Cranford admitted that “no matter what [Defendant]

did walking away from [the vehicle], [he] thought that was suspicious.” Accordingly,

Deputy Cranford drove past Defendant, turned around, and activated his blue lights

to effectuate a stop. Deputy Cranford characterized Defendant as being “polite and

cooperative” when he was first stopped. At the suppression hearing, the following

exchange occurred between Deputy Cranford and the prosecutor:

 4
 STATE V. HESTER

 McGEE, C.J., dissenting

 [Prosecutor:] So what were your particularized concerns?
 Why did you stop to talk to [Defendant]?

 [Deputy Cranford:] Due to the area that we were in and the
 reason when I got close the car pulled off. I saw
 [Defendant] walking away. I didn’t know if he had gotten
 out of the [vehicle], if a -- if he was lost, if a drug deal had
 just happened, or what was going on. So I wanted to get
 out and investigate and make sure everything was okay.

 As the concurrence and I recognize, the totality of the circumstances of this

case does not rise to the minimal level of objective justification required for a

reasonable articulable suspicion under the Fourth Amendment. Deputy Cranford

observed Defendant talking to someone in a vehicle that was haphazardly parked on

the side of the road in a high crime area. According to Deputy Cranford’s own

testimony, he did not recognize Defendant, did not know if Defendant had been in the

“suspicious” vehicle, and nothing about Defendant’s actions or appearance drew

Deputy Cranford’s attention. The vehicle drove away at a normal speed and in a

normal fashion, and Defendant merely walked down the road. Nevertheless, Deputy

Cranford thought it “suspicious” that Defendant had spoken to someone in a vehicle.

Rather than following the vehicle, Deputy Cranford chose to activate his blue lights

and effectuate a stop of Defendant.

 Deputy Cranford had, at most, an inchoate and unparticularized hunch that

criminal activity was afoot. Therefore, Defendant’s actions did not give rise to the

minimal level of objective justification required by the Fourth Amendment. See, e.g.,

Knudsen, 229 N.C. App. at 285, 747 S.E.2d at 651.

 5
 STATE V. HESTER

 McGEE, C.J., dissenting

 II. Merits of the Majority’s Attenuation Analysis

 As the majority correctly notes, evidence discovered as a result of an illegal

search or seizure is generally excluded at trial. See Wong Sun v. United States, 371

U.S. 471, 487-88, 9 L. Ed. 2d 441, 455 (1963). Despite this general principle, there

are several exceptions to the exclusionary rule, including the one at issue here: the

attenuation doctrine. See generally Utah v. Strieff, ___ U.S. ___, ___, 195 L. Ed. 2d

400, 407 (2016). Whether an intervening event is sufficient to “break the causal chain

between the unlawful stop and the discovery of” the evidence and is therefore

“attenuated[,]” rests on three factors as noted by the majority: (1) “the temporal

proximity between the unconstitutional conduct and the discovery of evidence to

determine how closely the discovery of evidence followed the unconstitutional

search;” (2) “the presence of intervening circumstances;” and (3) “the purpose and

flagrancy of the official misconduct.” Strieff, ___ U.S. at ___, 195 L. Ed. 2d at 408.

Had the State preserved its attenuation argument notwithstanding its failure to raise

it at trial, which I will discuss later, I would generally agree with the majority that

the facts of this case favor attenuation. However, I have the following reservations

with the majority’s application of Strieff’s three factors.

 (A) Temporal Proximity Between the Stop and the Discovery of Evidence

 The first step of Strieff analyzes the “temporal proximity between the

unconstitutional conduct and the discovery of evidence to determine how closely the

 6
 STATE V. HESTER

 McGEE, C.J., dissenting

discovery of evidence followed the unconstitutional search.” Id. The majority does

not analyze this factor at all, but rather proceeds directly to the second factor in the

analysis. I believe that an analysis of whether an illegal stop is sufficiently

attenuated from the discovery of some evidence is properly conducted by considering

all three factors the Supreme Court of the United States identified as bearing on

whether attenuation is present.

 The discovery of the firearm in the present case occurred in extremely close

proximity in time to the unconstitutional stop. After being seized, Deputy Cranford

spoke for some time with Defendant, contacted dispatch, searched for outstanding

warrants, and then again spoke with Defendant. All of these actions were part of the

unconstitutional stop, and were undertaken while the stop was ongoing. Therefore,

the discovery of the firearm, which occurred when Defendant pulled the firearm from

his waistband and attempted to discharge it, occurred seconds after the

unconstitutional stop. I would find that this factor favors attenuation.

 (B) Intervening Circumstances

 The second factor to consider in an attenuation analysis is whether there were

sufficient intervening circumstances between the unconstitutional conduct and the

discovery of the evidence. Strieff, ___ U.S. at ___, 195 L. Ed. 2d at 408. Like the

majority, I believe that Deputy Cranford’s observation of a new criminal act

perpetrated by Defendant during the course of the stop serves as an intervening

 7
 STATE V. HESTER

 McGEE, C.J., dissenting

circumstance that strongly favors attenuation. At the suppression hearing, as the

majority notes, Deputy Cranford testified that during the stop he asked Defendant to

lift up his shirt and Defendant responded by raising his shirt, pulling a firearm from

his waistband, pointing the gun at Deputy Cranford, and pulling the trigger.

According to Deputy Cranford’s testimony, the gun did not go off when the trigger

was pulled.1

 Deputy Cranford’s testimony that Defendant had committed the criminal act

of attempted first-degree murder breaks the causal chain between the

unconstitutional stop and the discovery of the evidence, and is entirely unconnected

from the stop. However, I would not go so far as to say, as the majority does, that the

“commission of a separate and distinct criminal offense is alone sufficient . . . to purge

the taint of the . . . illegal stop[.]” (emphasis added). In the present case, it is sufficient

to hold that the intervening criminal act perpetrated by Defendant strongly favors

attenuation and, along with the third factor (discussed below), would attenuate

Deputy Cranford’s unconstitutional stop from the discovery of the firearm. I would

leave a broader holding — that the commission of a separate and distinct criminal

offense will always be decisive — to an appropriate future case.

 (C) The Purpose and Flagrancy of the Official Misconduct

 1 The jury apparently did not credit Deputy Cranford’s testimony on this point, finding
Defendant not guilty of attempted first-degree murder. However, in reviewing a trial court’s ruling
on a motion to suppress, we examine the evidence in the light most favorable to the State. See State
v. Hunter, 208 N.C. App. 506, 509, 703 S.E.2d 776, 779 (2010).

 8
 STATE V. HESTER

 McGEE, C.J., dissenting

 The final Strieff factor inquires into the purpose and flagrancy of the police

misconduct. As the majority recognizes, “[t]he exclusionary rule exists to deter police

conduct. The third factor of the attenuation doctrine reflects that rationale by

favoring exclusion only when the police misconduct is most in need of deterrence –

that is, when it is purposeful or flagrant.” Strieff, ___ U.S. at ___, 95 L. Ed. 2d at 409

Like the majority, I would find that the third factor favors attenuation.

 As the Supreme Court of the United States has held, there must be something

more than a lack of reasonable suspicion in order for a finding of flagrancy to be

appropriate. See Strieff, ___ U.S. at ___, 195 L. Ed. 2d at 410 (“For [a] violation to be

flagrant, more severe police misconduct is required than the mere absence of proper

cause for the seizure.”). While Deputy Cranford’s conduct in stopping Defendant was

without reasonable suspicion, his errors and unconstitutional conduct do not rise to

a “purposeful or flagrant violation of [Defendant’s] Fourth Amendment rights,” nor is

there any indication on this record that the stop “was part of any systemic or

recurrent police misconduct.” Id.

 III. Preservation of Attenuation Argument

 Had the State raised and argued to the trial court its theory that Deputy

Cranford’s stop of Defendant was sufficiently attenuated from the discovery of the

firearm, my disagreement with the majority would end here. However, the State

failed to argue its attenuation argument in the trial court, and this Court should not

 9
 STATE V. HESTER

 McGEE, C.J., dissenting

address it in the first instance. At trial, Defendant moved to suppress the evidence

found in the search, arguing that Deputy Cranford’s stop violated his rights under

the Fourth Amendment to the United States Constitution. At the hearing on

Defendant’s motion, the State presented evidence from Deputy Cranford and his

superior officer. Thereafter, the State defended the constitutionality of the stop solely

on the grounds that Deputy Cranford possessed reasonable suspicion to stop

Defendant. The trial court ruled exclusively on that basis, and found that Deputy

Cranford possessed reasonable suspicion to stop Defendant. The attenuation doctrine

was never raised by the State and, as the majority concedes, the words “attenuation”

and “intervening circumstance” were never spoken at the suppression hearing.

 As the majority notes, the question for this Court when reviewing a trial court’s

ruling on a motion to suppress “is whether the ruling of the trial court was correct

and not whether the reason given therefor [was] sound or tenable. The crucial inquiry

for this Court is admissibility and whether the ultimate ruling was supported by the

evidence.” State v. Bone, 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001) (emphasis added).

The majority reads the second clause, italicized above, from Bone’s holding. When

considering the admissibility of the evidence, we must consider whether the “ultimate

ruling” of the trial court was supported by the evidence. The “ultimate ruling” of the

trial court in the present case was that the motion to suppress should be denied

 10
 STATE V. HESTER

 McGEE, C.J., dissenting

because Deputy Cranford had reasonable suspicion to stop Defendant. As discussed

above, this ruling was incorrect.

 We should not suggest that the trial court’s “ultimate ruling” denying

Defendant’s motion to suppress – because Deputy Cranford had reasonable suspicion

to stop Defendant – also contained an unwritten, but implied, alternative ruling that,

if Deputy Cranford’s stop was unconstitutional, the unconstitutional stop was

sufficiently attenuated from the discovery of the evidence so as to be admissible. The

trial court never ruled on whether the unconstitutional stop was sufficiently

attenuated from the discovery of the evidence, because attenuation was never raised

by the State.

 The majority suggests that the “occurrence of an intervening event” only

“becomes an issue” if the trial court “finds the underlying illegality,” and that an

“intervening event” is not an “arguable issue” until the defendant “sustain[s] his

burden of persuasion on the illegality of the police conduct.” I disagree. The legality

of Deputy Cranford’s stop of Defendant and the admissibility of the firearm found on

Defendant was at issue. In fact, it was the only issue being litigated in Defendant’s

motion to suppress. The State argued, uninterrupted and at length, in opposition to

Defendant’s motion to suppress. Nothing limited the State from arguing an

alternative position, such as attenuation, the position it now raises in this Court in

the first instance. Litigants make alternative arguments in support of legal positions

 11
 STATE V. HESTER

 McGEE, C.J., dissenting

in our trial courts on a daily basis, and waive the arguments they fail to make. If the

majority were correct, the State would only raise its “intervening event” theory2 after

the trial court had determined that the stop was not supported by reasonable

suspicion. But at that point, it would have been too late – the trial court would have

already ruled on and granted Defendant’s motion to suppress.

 The State had ample opportunity and compelling reason to raise its

attenuation argument as an alternative to its argument that the stop was supported

by a reasonable suspicion. Although Strieff had not yet been decided by the Supreme

Court of the United States, Strieff did not change governing law; it only supplemented

existing law by applying the factors set out in Brown v. Illinois, 422 U.S. 590, 45 L.

Ed. 2d 416 (1975). The attenuation doctrine is firmly rooted in North Carolina law,

and has been considered and applied in North Carolina Supreme Court cases decades

old. See, e.g., State v. Allen, 332 N.C. 123, 127-28, 418 S.E.2d 225, 228-29 (1992);

State v. Freeman, 307 N.C. 357, 359-60, 298 S.E.2d 331, 332-33 (1983). If the State

had wished to argue an alternative position, it was required to do so in the trial court

in the first instance. The State clearly knows how to make such an alternative

argument, as they did so in their brief to this Court in this case.

 2I note that an “intervening event,” or intervening circumstance, is only one of the three factors
used to determine if the discovery of some evidence is sufficiently attenuated from unconstitutional
conduct. See Strieff, ___ U.S. at ___, 195 L. Ed. 2d at 408. For ease of reading, I employ the
nomenclature employed by the majority.

 12
 STATE V. HESTER

 McGEE, C.J., dissenting

 This Court confronted a similar situation in State v. Gentile, 237 N.C. App. 304,

766 S.E.2d 349 (2014). In Gentile, the trial court granted the defendant’s motion to

suppress evidence found in a search of his home, holding that when the officers

noticed the smell of marijuana emanating from the residence, they “were not in a

place in which they had a right to be.” Gentile, 237 N.C. App. at 308, 766 S.E.2d at

352. On appeal, this Court agreed with the trial court that the officers were in a place

they had “no legal right to be” when they smelled the marijuana, which was the basis

for the search. Id. at 310, 766 S.E.2d at 353. After so holding, the trial court turned

to the State’s belated argument that

 even if the detectives’ entry onto constitutionally protected
 areas of defendant’s property was unlawful, the trial court
 erred by granting the motion to suppress because it failed
 to examine the remaining portions of the search warrant
 affidavit to determine if the warrant was still supported by
 probable cause, absent the odor of marijuana.

Id. Confronted with this argument, this Court held that the State had “failed to

preserve this issue on appeal” because “the State never argued before the trial court

that the motion to suppress should be denied because even if the detectives had no

legal right to be on the driveway when they smelled the marijuana, the remaining

portions of the search warrant were nevertheless sufficient to establish probable

cause.” Id. at 310, 766 S.E.2d at 353-54. Accordingly, this Court dismissed the State’s

alternative argument as unpreserved. Id.

 13
 STATE V. HESTER

 McGEE, C.J., dissenting

 The circumstances of the present case are no different from the ones confronted

by this Court in Gentile. In the present case, as in Gentile, the State failed to argue

to the trial court its alternative theory as to why Defendant’s motion to suppress

should be denied. Since “the State never argued before the trial court that the motion

to suppress should be denied because” the discovery of the evidence was sufficiently

attenuated from Deputy Cranford’s unconstitutional conduct, the State “failed to

preserve this issue on appeal.” Id. at 310, 766 S.E.2d at 353. This Court is bound by

Gentile’s reasoning. In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).

 The majority suggests that Gentile is “easily distinguishable” from the present

case because in Gentile “the State sought to overturn the trial court’s ruling, which

granted the defendant’s motion to suppress,” while in this case the State seeks to

defend the trial court’s denial of Defendant’s motion to suppress. Respectfully, I

disagree with the majority’s attempt to distinguish Gentile, and note it creates a

needlessly complicated and unfair rule of preservation. Under the majority’s theory,

in Gentile, all the State would have had to do to be able to “swap horses” would have

been to convince the trial court that their incorrect theory – the police were in a place

in which they had a lawful right to be when they smelled the marijuana – was in fact

correct. In that circumstance, the State would have been free to “swap” that theory

for any other theory on appeal – including the one we refused to consider because it

was not properly preserved – while the defendant would have been relegated to those

 14
 STATE V. HESTER

 McGEE, C.J., dissenting

theories it preserved by arguing them to the trial court. In other words, whether a

litigant is bound by the arguments it makes in the trial court depends only upon

whether the arguments were accepted by the trial court, regardless of whether the

trial court was correct. If the State loses a motion to suppress – i.e. a defendant’s

motion to suppress is granted – then the State is forever wedded to whatever theory

it presented at trial. If, however, the defendant’s motion to suppress is denied – on

an incorrect or otherwise untenable theory – the State may thereafter argue any legal

theory it wishes in order to preserve its favorable ruling. This is, in my view, an

untenable theory of preservation.

 This Court has held, time and again, that when a “defendant presents a

different theory [on appeal] to support his motion to dismiss than that he presented

at trial, this assignment of error is waived.” State v. Euceda-Valle, 182 N.C. App.

268, 272, 641 S.E.2d 858, 862 (2007) (emphasis added) (citation omitted); see also

State v. Chapman, ___ N.C. App. ___, 781 S.E.2d 320, 330 (2016) (“Because [the

defendant] has failed to properly preserve the specific argument she now seeks to make

on appeal regarding the basis upon which her motion to dismiss should have been

granted, we decline to reach the merits of her argument.” (emphasis added) (citations

omitted)). It appears arbitrary to declare some arguments preserved and others

unpreserved, not by whether those arguments were raised at trial, but rather simply

 15
 STATE V. HESTER

 McGEE, C.J., dissenting

by virtue of who obtained a favorable ruling by the trial court, regardless of whether

that ruling was correct.

 Ironically, in the present case the majority would agree that the State could

not raise its attenuation argument in this Court, if only the trial court had gotten the

law right. If the trial court had correctly determined Officer Cranford’s stop of

Defendant violated the Fourth Amendment, Defendant would be able to defend that

ruling under any theory he wished on appeal, while the State would be confined to

that theory raised in the trial court. Since the State inexplicably did not raise the

attenuation doctrine in the trial court, it would be barred from doing so in this Court

in the first instance.

 The North Carolina Rules of Appellate Procedure were designed to further

“fundamental fairness and the predictable operation of the courts[.]” State v. Hart,

361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007). On appeal to this Court, Defendant

focused the arguments in his principal brief exclusively on whether Deputy Cranford

had reasonable suspicion to seize him under the Fourth Amendment. Defendant did

so for good reason: the State’s argument urging the trial court to deny his motion to

suppress, and the trial court’s ultimate ruling on that motion to suppress, were

exclusively focused on whether reasonable suspicion existed for the stop. After

Defendant filed his brief in this Court, though, the ground shifted beneath his feet;

the State filed a brief waiving any argument that the stop was supported by

 16
 STATE V. HESTER

 McGEE, C.J., dissenting

reasonable suspicion and moved forward exclusively on the theory that the presence

or absence of reasonable suspicion did not matter because the stop was attenuated

from the discovery of the evidence.

 Upon receiving the State’s brief, Defendant was forced to litigate that new

issue, never before considered or passed upon within the context of the present case,

in a reply brief. To avoid being blindsided, should a defendant now make arguments

on appeal, and then proceed to preemptively research and brief any alternative bases

the State may conceivably argue to defend the trial court’s ruling? Perhaps not, lest

a defendant give the State any ideas about new theories of admissibility.

Preservation and the appellate rules are designed to prevent this circumstance.

 Our Supreme Court has held that “the law does not permit parties to swap

horses between courts in order to get a better mount [on appeal].” Weil v. Herring,

207 N.C. 6, 10, 175 S.E. 836, 838 (1934); see also State v. Sharpe, 344 N.C. 190, 194,

473 S.E.2d 3, 5 (1996) (“This Court has long held that where a theory argued on

appeal was not raised before the trial court, the law does not permit parties to swap

horses between courts in order to get a better mount in the Supreme Court.” (citation

omitted)). The majority suggests this rule only applies “to instances where the

party. . . carrying the burden on appeal to show error in the lower court’s ruling on

appeal, and relies upon a theory not presented before the lower court.” But the

Supreme Court in Weil did not equivocate: it held that a party – not just an appellant,

 17
 STATE V. HESTER

 McGEE, C.J., dissenting

but a party – may not “swap horses” between courts to gain a better mount on appeal.

Weil, 207 N.C. at 10, 175 S.E. at 838. Applying this rule to both appellants and

appellees is sensible, as it ensures fairness and requires litigants to present legal

arguments they believe to be meritorious to the trial court before presenting them to

an appellate court.

 In faithfully following our Supreme Court’s precedent, along with that

precedent’s necessary implications, our Supreme Court’s holdings in Wiel and Sharpe

decide this case in Defendant’s favor. It is undisputed that the State never argued

its attenuation theory in the trial court. The State proceeded only on the theory that

Deputy Cranford’s stop of Defendant was permissible because reasonable suspicion

was present, and in denying Defendant’s motion to suppress the trial court only ruled

on that basis. This precludes the State from raising its attenuation argument on

appeal in the first instance.

 This Court regularly dismisses arguments first advanced by defendants on

appeal in criminal cases, reasoning that those arguments have been waived due to

the defendants’ failure to raise them in the trial court. See, e.g., State v. Mastor, ___

N.C. App. ___, ___, 777 S.E.2d 516, 521 (2015) (dismissing a defendant’s argument

where the defendant did not “raise or argue” the objection in the trial court, reasoning

that the defendant “failed to preserve [the] issue for appellate review”). That rule

 18
 STATE V. HESTER

 McGEE, C.J., dissenting

should operate no differently for the State.3 Attenuation is a theory of admissibility

wholly independent from whether reasonable suspicion existed for a stop. I would

hold that if the State wishes to argue alternative legal theories of admissibility, the

onus is on the State to make those arguments to the trial court. Because Deputy

Cranford’s stop of Defendant was unconstitutional and the State failed to preserve

its attenuation argument, I would reverse the trial court’s denial of Defendant’s

motion to suppress and vacate his conviction. I dissent from the majority’s decision

to reach the State’s belated attenuation argument.

 Invocation of N.C.R. App. P. Rule 2

 I also dissent from the majority’s decision to “rule to invoke Rule 2 [of the North

Carolina Rules of Appellate Procedure] in this case[.]” The majority concludes that,

even if the State’s argument regarding attenuation was not preserved, this case is a

proper one for this Court to dispense with the rules of appellate procedure by invoking

N.C.R. App. P. 2. I disagree. As our Supreme Court has repeatedly stated: “Rule 2

relates to the residual power of our appellate courts to consider, in exceptional

circumstances, significant issues of importance in the public interest or to prevent

injustice which appears manifest to the Court and only in such instances.” State v.

Hart, 361 N.C. 309, 315-16, 644 S.E.2d 201, 205 (2007) (citation omitted). “This

 3 Though not dispositive, the United States Court of Appeals for the Tenth Circuit has
similarly held that attenuation arguments not raised in the trial court are waived on appeal. See
United States v. Hernandez, 847 F.3d 1257, 1261-62 (10th Cir. 2017) (holding the government waived
its attenuation argument by not making that argument to the district court).

 19
 STATE V. HESTER

 McGEE, C.J., dissenting

assessment – whether a particular case is one of the rare ‘instances’ appropriate for

Rule 2 review – must necessarily be made in light of the specific circumstances of

individual cases and parties, such as whether substantial rights of an appellant are

affected.” State v. Campbell, ___ N.C. ___, ___, ___ S.E.2d ___, ___, 2017 N.C. LEXIS

400, at *7 (2017) (citations omitted).

 The present case does not implicate “significant issues of importance in the

public interest.” Defendant in this case was convicted of a single offense, possession

of a stolen firearm, which is punishable as a class H felony. See N.C. Gen. Stat. § 14-

71.1 (2015). I do not see the merit in the majority’s apparent assertion that any

shooting or attempted shooting of a police officer – the only fact the majority

propounds as a reason for invoking Rule 2 – is a de facto reason to dispense with the

rules of appellate procedure. Such a rule would absolve the State of its need to follow

normal preservation rules in any case that allegedly involved the shooting (or, as

here, an alleged attempted shooting) of an officer, and would come close to the

creation of an “automatic right to review via Rule 2” for police shooting cases, a type

of rule our Supreme Court very recently rejected. See Campbell, ___ N.C. at ___, ___

S.E.2d at ___, 2017 N.C. LEXIS 400, at *7 (“In simple terms, precedent cannot create

an automatic right to review via Rule 2. Instead, whether an appellant has

demonstrated that his matter is the rare case meriting suspension of our appellate

rules is always a discretionary determination to be made on a case-by-case basis.”).

 20
 STATE V. HESTER

 McGEE, C.J., dissenting

The present case, in my view, also fails to implicate any manifest injustice. Rather,

the State would only be forced to proceed on appeal on those legal theories that it

raised in the trial court.

 IV. Conclusion

 Due to a lack of reasonable suspicion, Deputy Cranford’s stop of Defendant

violated Defendant’s right to be free from unreasonable searches and seizures under

the Fourth Amendment. The State does not contest this fact, and on appeal only

defends the stop by arguing that the discovery of the evidence was sufficiently

attenuated from Deputy Cranford’s unconstitutional conduct. Had attenuation been

raised and preserved by the State in the trial court, I agree with the majority that

the discovery of the firearm would have been sufficiently attenuated from Deputy

Cranford’s unconstitutional stop of Defendant.

 But the State failed to raise its attenuation argument before the trial court,

and cannot raise it here for the first time. I dissent from the majority’s and the

concurrence’s decision to address the State’s belated attenuation argument. The

preservation rule the majority crafts is untenable, and by faithfully applying

precedent from this Court and our Supreme Court, I would dismiss the State’s belated

argument, reverse the trial court’s denial of Defendant’s motion to suppress, and

vacate Defendant’s conviction. I further dissent from the majority’s and the

concurrence’s alternative decision to invoke N.C.R. App. P. 2.

 21
 STATE V. HESTER

McGEE, C.J., dissenting

 22