STATE OF NORTH CAROLINA v. NORMA ANGELICA WILLIAMS

No. 384A11

(Filed 14 June 2012)

### 1. Search and Seizure— vehicular stop—reasonable suspicion to extend stop—denial of motion to suppress proper

The trial court did not err by denying defendant's motion to suppress evidence obtained from the stop of the vehicle in which she was riding. While the finding of fact that "[defendant] produced driver's licenses from the states of Arizona and Texas" was not supported by competent evidence, there was competent evidence to support the remaining challenged findings of fact. Under the totality of the circumstances, the officer had reasonable suspicion to extend the traffic stop until a canine unit arrived after his investigation of the window tint violation was complete.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 714 S.E.2d 835 (2011), affirming a judgment entered on 3 November 2009 by Judge Christopher M. Collier in Superior Court, Iredell County. Heard in the Supreme Court on 12 March 2012.

*Roy Cooper, Attorney General, by J. Allen Jernigan, Special Deputy Attorney General, and Scott A. Conklin, Assistant Attorney General, for the State.*

*Michele Goldman for defendant-appellant.*

PARKER, Chief Justice.

The issue in this case is whether the Court of Appeals erred in affirming the trial court's denial of defendant's motion to suppress. For the reasons stated herein, we affirm the decision of the Court of Appeals.

Defendant was arrested in Iredell County, North Carolina, after sixty-five pounds of marijuana were found in an SUV in which she was traveling. Defendant was indicted under N.C.G.S. § 90-95(h)(1) for one count of trafficking in marijuana by possession and one count of trafficking in marijuana by transport. Defendant moved to suppress evidence of the recovered marijuana. After the trial court denied the motion, defendant entered into a plea agreement. Defendant reserved her right to appeal from the trial court's ruling on her motion to

suppress and then pleaded guilty to one trafficking count in exchange for the State's dismissing the second count. The trial court sentenced defendant to an active term of twenty-five to thirty months' imprisonment. Defendant gave timely notice of appeal to the Court of Appeals.

The State's evidence before the trial court at the suppression hearing tended to show the following. At 10:55 a.m. on 21 May 2008, Sergeant Randy Cass stopped an SUV traveling south on Interstate 77 for a window tint violation. Sergeant Cass directed the driver, Michelle Perez, to step to the front of his cruiser; he requested her driver's license and then asked her several questions. Perez told Sergeant Cass that the SUV belonged to defendant and that she was driving because defendant did not have a driver's license. When asked where she was coming from, Perez told Sergeant Cass that she just "flew out of Houston." Sergeant Cass told her that she was driving south on Interstate 77 and Houston was to the south. Perez was also not sure where she was going; she said that she was driving defendant so defendant could "DJ somewhere." Perez told Sergeant Cass to ask defendant where they were going because she "knows everything" and their destination was circled on defendant's map.

Sergeant Cass left the front of his cruiser and approached the SUV's passenger side to question defendant. Defendant declared that she did not own the SUV, but had arranged to purchase it from a friend. Defendant provided Sergeant Cass the SUV's registration and two state-issued identification cards from different states and with different addresses. Sergeant Cass determined that the SUV was registered to an Arkansas resident. Defendant also said that they were coming from Louisville, Kentucky, and that she was going to Club Kryptonite in Myrtle Beach, South Carolina. When asked how she knew Perez, defendant stated that she and Perez were cousins.

Sergeant Cass left defendant to ask Perez additional questions. Perez told him that she flew from Tucson, Arizona, to Houston and that she and defendant had hooked up at the airport. Perez initially said that she and defendant were cousins, but then said that they simply refer to each other as cousins because of their long-standing relationship. Sergeant Cass returned to defendant and asked her how she and Perez were cousins. Defendant first stated they were cousins on her dad's side, then said they were cousins on her grandmother's side, and finally said "that basically we grew up together." Sergeant Cass returned to Perez and asked her to have a seat inside his cruiser.

While inside the cruiser, Perez became nervous and "real fidgety." Sergeant Cass contacted a database to see if the SUV had been reported stolen and if either Perez or defendant had outstanding warrants or criminal histories. Several minutes later he learned that "everything was good." At some point while Perez was seated inside the cruiser, Sergeant Cass contacted other officers to assist with a search of the SUV. Sergeant Cass left his cruiser, returned defendant's identification cards, and then motioned for Perez to exit his cruiser. Once she exited, he handed her a warning citation for the tint violation and returned her driver's license. Sergeant Cass then asked Perez if there were any weapons, drugs, or large amounts of money inside the SUV. Perez answered, "[N]o," but declined to give consent to search the SUV. Sergeant Cass then requested that both defendant and Perez wait by his cruiser while a canine team arrived to conduct a sweep of the SUV. Once the team arrived, the drug dog alerted at the rear of the SUV, and law enforcement conducted a search, finding approximately sixty-five pounds of marijuana inside.

Sergeant Cass testified that he based his decision to search on several factors, including Perez's inability to articulate where she was coming from, "the conflict in the stories of being family," an absent third party's ownership of the SUV, and Perez's and defendant's consistency with aspects of the drug courier profile, such as the SUV's dark tinted windows and the use of an interstate highway.

At the conclusion of the evidence, the trial court made the following findings of fact:

1. That on May 21st, 2008 Sgt. Randy Cass with the Iredell County Sheriff's Department was working on patrol duty on Interstate 77 South here in Iredell County.

2. That about 10:55 AM that he observed a white SUV with what appeared to be illegally tinted windows, at which time he initiated a traffic stop.

3. Sgt. Cass approached the vehicle and spoke with the occupants briefly, then asked the driver, later identified as Perez, to step out of the vehicle.

4. The officer had Perez step to the front of his vehicle and asked where they were coming from. Perez eventually stated they were coming from Houston, Texas, even though they were traveling south on the interstate.

5. That during this conversation Perez could not articulate their destination, even in general terms, even though she was driving the vehicle. Perez further stated that she and the defendant were cousins.

6. Sgt. Cass then spoke with the passenger, later identified as Defendant Williams, who was still seated in the vehicle.

7. During this conversation Ms. Williams stated they were coming from Kentucky and headed to Club Kryptonite in Myrtle Beach.

8. When asked Williams said that Perez was her cousin and claimed a familial relationship initially, but then later stated they simply called each other cousins based on their close and long term relationship.

9. Ms. Williams produced driver's licenses from the states of Arizona and Texas and had indicated the car was owned by a friend of hers, that she intended to purchase it. The officer then at 11:04 AM told Perez that she was going to get a warning ticket, at which time she was seated in the vehicle.

10. At 11:08 he begins writing a warning ticket after calling in to check on the status of the vehicle, whether or not either the driver or the passenger had any outstanding warrants. At 11:15 the ticket was given to Perez while they were, Perez and Sgt. Cass were in front of the patrol car, and as she started to walk away the officer asked if she would answer further questions, at which time she was asked for consent to search the vehicle, to which she did not give consent.

11. At that time Sgt. Cass indicated he was going to call for a canine unit, which unit arrived at 11:28 AM and indicated positive on the car within a minute or two after arriving.

Based on these facts, the trial court concluded that Sergeant Cass had a reasonable and articulable suspicion based on the totality of the circumstances to call for the canine unit.

The trial court denied defendant's motion to suppress the marijuana, and defendant timely appealed to the Court of Appeals. *State v. Williams*, —— N.C. App. ——, ——, 714 S.E.2d 835, 837 (2011). A divided panel of the Court of Appeals affirmed the trial court, concluding that defendant's challenges to the trial court's findings of fact were either without merit or inconsequential and that Sergeant Cass had reasonable suspicion to extend the detention after Perez

received a warning for the tint violation. *Id.* at ——, 714 S.E.2d at 838-41. The dissent disagreed on all accounts. *Id.* at ——, ——, 714 S.E.2d at 842-45, 848 (McGee, J., dissenting). Defendant appeals to this Court as a matter of right based on the dissent. For the reasons stated herein, we affirm the decision of the majority below.

Before this Court defendant renews her challenge to three of the findings of fact and argues that the findings of fact do not support the trial court's conclusions of law. In evaluating the denial of a motion to suppress, the reviewing court must determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). The trial court's findings of fact on a motion to suppress "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994) (citing *State v. Torres*, 330 N.C. 517, 523, 412 S.E.2d 20, 23 (1992), *overruled on other grounds by State v. Buchanan*, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001); and *State v. Massey*, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986)), *cert. denied*, 513 U.S. 1096, 130 L. Ed. 2d 661 (1995). "Indeed, an appellate court accords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh [the evidence,] and resolve any conflicts in the evidence . . . ." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619-20 (1982) (citations omitted). Conclusions of law are reviewed de novo and "are fully reviewable on appeal." *State v. McCollum*, 334 N.C. 208, 237, 433 S.E.2d 144, 160 (1993) (citation omitted), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

Defendant makes two challenges with respect to finding number four, which states, "[Sergeant Cass] had Perez step to the front of his vehicle and asked where they were coming from. Perez eventually stated they were coming from Houston, Texas, even though they were traveling south on the interstate." First, defendant argues that the use of the word "eventually" "inaccurately described a delay [by Perez in] providing information that she was coming from Houston" and "connotes evasiveness." We disagree. The term "eventually" fairly describes the exchange of information between Perez and Sergeant Cass in which Perez clarified where she was traveling from. When Sergeant Cass first asked Perez where she was coming from, she said that she "had just flew out of Houston." Sergeant Cass then asked her if she "flew *out* here," and she replied, "No, I flew out *to* Houston."

(emphasis added). Perez later explained that she had flown from Tucson, Arizona, to Houston. Perez's first response certainly permits the inference that she had flown from Houston to some other destination. Since Perez was driving a vehicle, Sergeant Cass understandably attempted to clarify where she was coming from most recently or right then, at which point Perez said she and defendant had driven from Houston. This evidence is competent evidence to support a finding that Perez "eventually" told Sergeant Cass that she was coming from Houston. That the word may connote evasiveness does not negate that the finding was supported by competent evidence. Defendant's argument is without merit.

Similarly, we reject defendant's second argument with respect to finding number four. Defendant argues that "[t]o the extent that . . . [the finding] misleadingly implies that Ms. Perez claimed that she was traveling directly from Houston, it is not supported by the evidence." However, Perez insisted she was coming from Houston, even after Sergeant Cass pointed out that she was driving south and that Texas was further south. When Sergeant Cass asked Perez, "[R]ight now you're coming from Houston?," she replied, "[Y]eah." Thus, competent evidence supported the trial court's finding that Perez said "they were coming from Houston, Texas, even though they were traveling south on the interstate."

Defendant also challenges finding of fact number five, which declares that during Sergeant Cass's initial conversation with Perez, she "could not articulate their destination, even in general terms, even though she was driving the vehicle." As defendant herself concedes, "Perez could not provide Sgt. Cass with the name of the city she was driving to." Sergeant Cass testified that when he asked Perez where she and defendant were going, she said "she wasn't sure." The most Perez could tell Sergeant Cass was that defendant was "going to DJ somewhere" at a location marked on a map that defendant had in her possession. Perez's response does not amount to even a general articulation of their destination. Finding number five was supported by competent evidence.

In addition, defendant challenges finding of fact number nine, which provides that "[defendant] produced driver's licenses from the states of Arizona and Texas." Although Sergeant Cass initially referred to the identification documents supplied by defendant as driver's licenses, he immediately changed the reference to identification cards. Also, the record reflects that defendant produced state-issued identification cards, not driver's licenses, from Arizona and

Texas. This finding of driver's licenses is not supported by the evidence. However, as defendant notes, this error was not outcome determinative in the Court of Appeals' analysis.

Having established that the trial court's findings of fact numbers four and five were supported by competent evidence, we now address whether defendant's constitutional rights were violated. Defendant argues that Sergeant Cass did not have reasonable suspicion to detain her after he completed his investigation of the window tint violation, and thus, her rights under the Fourth Amendment to the United States Constitution were violated. Defendant concedes that the initial stop was constitutional.

"A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 160 L. Ed. 2d 842, 846 (2005). "After a lawful [traffic] stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions." *State v. McClendon*, 350 N.C. 630, 636-37, 517 S.E.2d 128, 132-33 (1999) (citing, *inter alia*, *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317 (1984)). Thus, to detain a driver beyond the scope of the traffic stop, the officer must have the driver's consent or reasonable articulable suspicion that illegal activity is afoot. *See Florida v. Royer*, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236 (1983) (declaring that, absent consent to a voluntary conversation or to a search, a law enforcement officer may not detain a person "even momentarily without reasonable, objective grounds for doing so"); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968).

An officer has reasonable suspicion if a "reasonable, cautious officer, guided by his experience and training," would believe that criminal activity is afoot "based on specific and articulable facts, as well as the rational inferences from those facts." *State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994) (citing *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906; and *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979)). A reviewing court must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United*

*States v. Arvizu*, 534 U.S. 266, 273, 151 L. Ed. 2d 740, 749-50 (2002) (quoting *Cortez*, 449 U.S. at 418, 66 L. Ed. 2d at 629). While something more than a mere hunch is required, the reasonable suspicion standard demands less than probable cause and considerably less than preponderance of the evidence. *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)).

Examination of the trial court's findings of fact in light of these principles discloses several factors permitting inferences consistent with a reasonable suspicion in the mind of an experienced law enforcement officer who has attained the rank of Sergeant. First, Perez said she and defendant were coming from Houston, Texas, which was illogical because they were traveling south on Interstate 77, and Texas was further south. Second, defendant said they were coming from Kentucky and were traveling to Myrtle Beach. This inconsistency raises a suspicion as to the truthfulness of the statements and could cause a reasonable law enforcement officer to question why the two would travel from Houston to Myrtle Beach through Kentucky. Third, Perez could not say where they were going. Perez's inability to articulate where they were going, along with her illogical answer about driving from Houston, would permit an inference that Perez was being deliberately evasive, that she had been hired as a driver and intentionally kept uninformed, or that she had been coached as to her response if stopped. Fourth, in light of the above, defendant's effort to claim a familial relationship, followed by an admission that the two just called each other cousins based on their long-term relationship, could raise a suspicion that the alleged familial relationship was a prearranged fabrication. Finally, the SUV with illegally tinted windows was owned by a third person.

Viewed individually and in isolation, any of these facts might not support a reasonable suspicion of criminal activity. But viewed as a whole by a trained law enforcement officer who is familiar with drug trafficking and illegal activity on interstate highways, the responses were sufficient to provoke a reasonable articulable suspicion that criminal activity was afoot and to justify extending the detention until a canine unit arrived. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277, 151 L. Ed. 2d at 752 (citing *Wardlow*, 528 U.S. at 125, 145 L. Ed. 2d at 577); *see also Sokolow*, 490 U.S. at 9, 11, 104 L. Ed. 2d at 11, 13 (holding that factors which by themselves suggested innocent travel, considered collectively, amounted to reasonable suspicion).

Defendant cites *State v. Pearson*, 348 N.C. 272, 498 S.E.2d 599 (1998), *State v. Myles*, 188 N.C. App. 42, 654 S.E.2d 752, *aff'd per curiam*, 362 N.C. 344, 661 S.E.2d 732 (2008), and *State v. Falana*, 129 N.C. App. 813, 501 S.E.2d 358 (1998), to argue that our courts have never found reasonable suspicion in a case with similar facts. Although each of those cases compares statements between the driver and the passenger, in two of them, *Myles* and *Falana,* the statements were not inconsistent. *Myles*, 188 N.C. App. at 51, 654 S.E.2d at 758 (noting that while the driver initially told the officer that he and the defendant-passenger were staying in Fayetteville for "about a week," he later said "he *may* stay longer if he found employment," which was consistent with the defendant's statement that they were "supposed to stay [in Fayetteville] for a week" (alteration in original)); *Falana*, 129 N.C. App. at 814-15, 501 S.E.2d at 359 (noting that the driver said that he and the passenger were in New Jersey for approximately three days and were returning home, and the passenger said that she and the driver were in New Jersey since Saturday or Sunday). In *Pearson* this Court held that where the defendant had been sitting in the officer's car for a period of time and had consented only to the search of his vehicle, the defendant did not consent and the officer did not have reasonable suspicion to frisk the defendant's person for weapons based on his nervousness and the inconsistent statements of the defendant and his passenger about where they had spent the previous night. 348 N.C. at 274, 276-77, 498 S.E.2d at 599-600, 601. Although nervousness was discussed in *Pearson*, 348 N.C. at 276, 498 S.E.2d at 601, *Myles*, 188 N.C. App. at 46-51, 654 S.E.2d at 755-58, and *Falana*, 129 N.C. App. at 817, 501 S.E.2d at 360, nervousness here is not a factor inasmuch as the trial court did not make a finding regarding Perez's nervousness. Thus, read in light of the totality of the circumstances, these cases are not determinative of the case under review. As Chief Justice Rehnquist noted in *Arvizu*, "To the extent that a totality of the circumstances approach may render appellate review less circumscribed by precedent than otherwise, it is the nature of the totality rule." 534 U.S. at 276, 151 L. Ed. 2d at 751.

We hold that, under the totality of the circumstances, Sergeant Cass had reasonable suspicion to extend the traffic stop after his investigation of the window tint violation was complete, and the trial court did not err in denying defendant's motion to suppress.

For the reasons stated herein, we affirm the decision of the Court of Appeals.

AFFIRMED.