IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-70

No. COA20-293

Filed 16 March 2021

Macon County, No. 18 CRS 000220

STATE OF NORTH CAROLINA

v.

MICHAEL MAYO MACKE

Appeal by defendant from judgment entered 3 December 2019 by Judge William A. Wood II in Macon County Superior Court. Heard in the Court of Appeals 24 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jessica Macari, for the State.*

*Grace, Tisdale & Clifton, P.A., by Michael A. Grace, for defendant-appellant.*

TYSON, Judge.

¶ 1  Michael Mayo Macke ("Defendant") appeals from a judgment entered upon his guilty plea. We affirm.

## I. Background

¶ 2  Troopers from the North Carolina State Highway Patrol ("NCSHP") conducted a checkpoint on "Depot Street" in Macon County, on the evening of 26 August 2016,

as a part of a statewide initiative of high-profile traffic monitoring. Officers selected this location on "Depot Street" because of good visibility and sufficient room for vehicles to safely pull off the road.

¶ 3         The troopers stopped every vehicle that approached to request a driver's license and to observe for signs of impairment. The troopers conducted the checkpoint from 11:10 p.m. to 1:30 a.m. Troopers followed the procedures set forth on the NCSHP Checking Station Authorization Form.

¶ 4         Around 11:42 p.m., a black Cadillac SUV driven by Defendant approached the checkpoint. Trooper Jonathan Gibbs approached the vehicle to ask Defendant for his driver's license. As Defendant was looking for his driver's license another car pulled behind Defendant's car. Trooper Gibbs asked Defendant to pull over to the side of the road to continue looking.

¶ 5         After pulling over, Defendant provided his driver's license. Trooper Gibbs noticed "an odor of alcohol coming from [Defendant]'s breath and could see that he had red glassy eyes." Trooper Gibbs asked Defendant if he had any alcohol to drink and Defendant responded, "he had a few about five hours ago." Trooper Gibbs then asked Defendant to step out of his vehicle and go to the front right passenger's side of the vehicle.

¶ 6         When Defendant exited the vehicle, he was unsteady on his feet and used the vehicle to support himself as he was walking around the vehicle. While performing

the Walking and Turn test, he missed placing his heel-to-toe four times and used his arms to balance one time on the way out; he performed the turn inconsistent with instructions; and, upon the return, he missed placing his heel-to-toe three times, stepped off the line one time, and took ten steps instead of the nine steps as instructed.

¶ 7      While performing the One Leg Stand Test, Defendant was unable "to keep his foot up longer than three seconds, swayed left and right while balancing, used both arms for balance, and was hopping." Defendant was unable to touch the tip of his nose with the tip of his finger in the Finger to Nose test. Finally, while performing the Romberg Balance Test, Defendant swayed back and forth two or more inches and estimated 49 seconds instead of 30 seconds as instructed.

¶ 8      Trooper Gibbs reported while Defendant was in the patrol car being transported to jail, Defendant stated he had about $2,000 in cash on him and offered it to Trooper Gibbs if the officer would let him go. Defendant submitted to the Intox EC/IR II intoximeter, which registered a blood alcohol reading of .10.

¶ 9      Defendant was indicted for offering a bribe and driving while impaired on 14 May 2018. Defendant filed a motion to suppress evidence from the checkpoint, arguing the checkpoint violated his Fourth Amendment rights and NCSHP departmental guidelines. Defendant also argued N.C. Gen. Stat. § 20-16 (2019) was facially invalid and violated the "fundamental right to travel"; violated "Defendant's

Constitutional right to equal protection of the laws pursuant to the Privileges or Immunities Clause and the Equal Protection Clause, which are guaranteed by the Fourteenth Amendment to the United States Constitution" on 28 October 2019.

Defendant also filed a motion to dismiss based upon vindictive prosecution on 18 November 2019. The trial court denied both motions. The trial court noted Defendant's objections to the motion to suppress. Defendant pleaded guilty to driving while impaired. The charge of offering a bribe was dismissed. Defendant was sentenced to a term of 120 days in custody, which was suspended. He was placed on 18 months of unsupervised probation. Defendant's driver's license was revoked and he was ordered to pay costs, fees, and fines totaling $1,085.00. Defendant appeals the preserved denial of his motion to suppress.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 15A-979(b) (2019).

## III. Issues

Defendant argues: (1) the creation and operation of the checkpoint was not a valid exercise of the State's police power; (2) N.C. Gen. Stat. § 20-16.3A violates the fundamental right to travel pursuant to the Privileges or Immunities Clause; (3) N.C. Gen. Stat. § 20-16.3A violates the Equal Protection Clause; and, (4) in light of the unconstitutionality of N.C. Gen. Stat. § 20-16.3A the trial court erred in denying his

motion to suppress.

## IV. Standard of Review

Our Supreme Court has held:

> The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. However, when . . . the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed *de novo* and are subject to full review. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*State v. Biber*, 365 N.C. 162, 167-68 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

## V. Programmatic Purpose

Defendant contends the checkpoint did not serve a valid programmatic purpose, was an invalid exercise of the State's police power, and constituted an unreasonable search in violation of Defendant's rights under the Fourth and Fourteenth Amendments. U.S. Const. amend. IV & XIV.

The Supreme Court of the United States, the North Carolina Supreme Court, and this Court have held the Fourth Amendment's reasonableness standard for a search or seizure is to be based upon either consent or individualized suspicion. *See Terry v Ohio*, 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06 (1968); *State v. Williams*,

366 N.C. 110, 116, 726 S.E.2d 161, 167 (2012); *State v. Veazey*, 191 N.C. App. 181, 184, 662 S.E.2d 683, 686 (2008). The Supreme Court of the United States has recognized an exception to this requirement for roadside checkpoints without consent or an individualized suspicion, provided the purpose of the checkpoint is legitimate and the procedures surrounding the checkpoint are reasonable. *United States v. Martinez-Fuerte*, 428 U.S. 543, 561-62, 49 L. Ed. 2d 1116, 1130-31 (1976).

¶ 16 Our Court has held: "a checkpoint with an invalid primary purpose, such as checking for illegal narcotics, cannot be saved by adding a lawful secondary purpose to the checkpoint, such as checking for intoxicated drivers." *Veazey*, 191 N.C. App. at 185, 662 S.E.2d at 686. To evaluate the legitimacy of a checkpoint, a two-part inquiry is required.

¶ 17 "First, the court must determine the primary programmatic purpose of the checkpoint." *Id.* The checkpoint must be aimed at addressing a "specific highway safety threat" and not for general crime control. "[C]heckpoints primarily aimed at addressing immediate highway safety threats can justify the intrusions on drivers' Fourth Amendment privacy interests occasioned by suspicionless stops." *Id*. If the police have a general crime control aim, an individualized suspicion must exist. *Id.* (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 41-42, 148 L. Ed. 2d 333, 343-44 (2000) (checkpoint with a primary purpose of finding illegal narcotics held unconstitutional)). The Supreme Court of the United States stated valid "specific

highway safety threats" to support legitimate checkpoints include finding intoxicated drivers, checking for valid driver's licenses, and verifying vehicle registrations. *Michigan State Police v. Sitz*, 496 U.S. 444, 455, 110 L. Ed. 2d 412, 423 (1990); *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74 (1979).

¶ 18      "Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint, that does not mean the stop is automatically, or even presumptively, constitutional. It simply means that the court must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances." *Veazey*, 191 N.C. App. at 185-86, 662 S.E.2d at 686-87 (citation omitted). A court must weigh "[(1)] the gravity of the public concerns served by the seizure, [(2)] the degree to which the seizure advances the public interest, and [(3)] the severity of the interference with individual liberty." *Id.* at 186, 662 S.E.2d at 687 (citing *Illinois v. Lidster*, 540 U.S. 419, 427-28, 157 L. Ed. 843, 852-53 (2004)).

¶ 19      The State presented testimony of Troopers Jonathan Gibbs and David Williams at the hearing on the motion to suppress. They testified they and several other officers conducted a traffic checkpoint with the prior approval of their superior officer on the day of the offense. Trooper Williams testified to how the checkpoint was set up, the procedures and duration of the checkpoint, how the stops would be conducted, and why they had changed locations. During the checkpoint, a patrol car had its blue lights active at all times.

¶ 20        Trooper Williams further testified how the checkpoint location changed approximately every thirty minutes to avoid identification of the checkpoint on the mobile direction application Waze.  Through Troper Williams' testimony, the State showed the troopers' compliance with the NCSHP policy on traffic checkpoints, and the prior authorization for the checking station.  This testimony was admitted into evidence without Defendant's objection.

¶ 21        Based on this and other evidence presented at the hearing, the trial court denied Defendant's motion to suppress.  The trial court found the purpose of the checkpoint was "to check each driver for a valid driver's license and evidence of impairment."  The trial court concluded: (1) this was a valid and constitutional programmatic purpose; (2) the checkpoint was subject to a detailed plan and not spontaneous; (3) the location and time span were reasonable; (4) the interference with the public was minimal; and, (5) Defendant's rights were not violated by the manner in which the checkpoint was conducted.

¶ 22        Defendant asserts the troopers changing the location of the checkpoint throughout the evening is not a programmatic purpose.  However, this change was planned prior to and was contained in the authorization of the plan by Trooper Williams' supervisors.  Unlike the facts in *State v. Rose*, 170 N.C. App. 284, 291-97, 612 S.E.2d 336, 341-44 (2005), cited by Defendant, wherein officers admitted there was not an established plan before the checkpoint was set up and narcotics detectives

were involved in the operation of the checkpoint, here, the troopers stopped every vehicle that entered the checkpoint, as the plan outlined. No narcotics officers or drug dogs were present on the scene, and no drug test kits were implemented on the scene. Troopers moved to another location based upon a plan after a set duration.

¶ 23    Based upon the troopers' testimony, the trial court properly determined the programmatic purpose of the checkpoint was to check for a valid driver's license and for evidence of impairment. The court further found these purposes were valid programmatic purposes, which were reasonable under the circumstances. The trial court correctly made all requisite findings necessary to support its ultimate conclusion. The trial court did not err in denying Defendant's motion to suppress on the basis of the checkpoint's programmatic purpose. Defendant's argument is overruled.

## VI. Right to Travel

¶ 24    Defendant argues N.C. Gen. Stat. § 20-16.3A violates the right to travel pursuant to the Privileges or Immunities Clause. U.S. Const. amend. XIV, § 1. Our Supreme Court held: "The police power of the State is broad enough to sustain the promulgation and fair enforcement of laws designed to restore the right of safe travel by temporarily restricting all travel, other than necessary movement reasonably excepted from the prohibition." *State v. Dobbins*, 277 N.C. 484, 499, 178 S.E.2d 449, 458 (1971) (city declaring a state of emergency and imposing a city-wide curfew with

specified exceptions for emergencies and necessary travel is a valid exercise of the police power).

The checkpoint at issue was established with the express purpose of finding and deterring traffic violations and impaired drivers, both of which are valid public safety concerns. This authority was established by our General Assembly in N.C. Gen. Stat. § 20-16.3A, which authorizes the creation of traffic checkpoints for such purposes. A traffic checkpoint, with a purpose to discover and deter traffic violations, which does not stop travel altogether and only delays travel for a few moments, does not violate the right to free travel. N.C. Gen. Stat. § 20-16.3A is presumed to be constitutional, and Defendant has failed to show a violation of his constitutional rights. *Id.*

The trial court did not err in holding the checkpoint did not violate Defendant's constitutional right to freely travel and properly denied Defendant's motion to suppress on this basis.

## VII. Equal Protection

Defendant argues N.C. Gen. Stat. § 20-16.3A is drafted to make it difficult to establish the discriminatory intent required to show a violation of the Equal Protection Clause. U.S. Const. amend. XIV, § 1.

Defendant cites N.C. Gen. Stat. § 20-16.3A(d), which provides: "The placement of checkpoints should be random or statistically indicated, and agencies shall avoid

placing checkpoints repeatedly in the same location or proximity. This subsection shall not be grounds for a motion to suppress or a defense to any offense arising out of the operation of a checking station." N.C. Gen. Stat. § 20-16.3A(d). Defendant asserts N.C. Gen. Stat. § 20-16.3A(d) disallows any and all challenges to equal protection in violation of the Equal Protection Clause. U.S. Const. amend. XIV, § 1.

¶ 29 The previous subsection of the same statute, N.C. Gen. Stat. § 20-16.3A(c), provides: "Law enforcement agencies may conduct any type of checking station or roadblock as long as it is established and operated in accordance with the provisions of the United States Constitution and the Constitution of North Carolina." Contrary to Defendant's assertions, N.C. Gen. Stat. § 20-16.3A(d) allows a defendant to challenge a checkpoint under both the Constitution of the United States and the North Carolina Constitution.

¶ 30 The trial court did not err in holding the checkpoint did not violate Defendant's constitutional right to equal protection of the laws and by denying Defendant's motion to suppress. Defendant's arguments are overruled.

## VIII. Constitutionality

¶ 31 Here, as before the trial court, Defendant asserts N.C. Gen. Stat. § 20-16.3A is unconstitutional, the checkpoint was unlawful, and the trial court erred in denying his motions to suppress and dismiss. As we have held the checkpoint had a valid programmatic purpose, the statute did not violate Defendant's right to free travel.

The statute did not violate Defendant's rights under the Privileges or Immunities and the Equal Protection Clauses of the Fourteenth Amendment. U.S. Const. amend. XIV, Defendant's argument is dismissed.

## IX. Conclusion

The trial court property concluded the checkpoint had a valid programmatic purpose. N.C. Gen. Stat. § 20-16.3A does not violate Defendant's right to free travel nor the Equal Protection Clause. The trial court properly denied Defendant's motion to suppress. The judgment entered upon Defendant's guilty plea is affirmed. *It is so ordered.*

AFFIRMED.

Judges COLLINS and WOOD concur.