IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-434

Filed 16 January 2024

Watauga County, Nos. 18CRS50759-62, 18CRS50936

STATE OF NORTH CAROLINA

v.

MICHAEL JUSTIN HAGAMAN, Defendant.

Appeal by defendant from order and judgment entered 10 November 2021 by Judge Gary M. Gavenus in Superior Court, Watauga County. Heard in the Court of Appeals 21 March 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Zachary K. Dunn, for the State.*
>
> *Patterson Harkavy LLP, by Christopher A. Brook, for defendant-appellant.*

STROUD, Judge.

Defendant-appellant appeals from an order and judgment entered pursuant to a guilty plea for one count of indecent liberties with a child. In the plea agreement, Defendant-appellant reserved his right to appeal from the trial court's ruling on his motion to suppress. Defendant-appellant argues on appeal the trial court erred in denying his motion to suppress. For the following reasons, we affirm.

## I. Background

The State's evidence at the motion to suppress hearing tended to show that on

or about 25 May and 30 May 2018, Detective J.B. Reid of the Boone Police Department was "conducting an undercover operation involving the distribution of child pornography on certain file sharing networks." Detective Reid found ten files containing explicit videos of child pornography uploaded to a file sharing network on the internet known as BitTorrent. Based upon the Internet Protocol ("IP") address that uploaded the videos, Detective Reid determined the files came from Defendant's residence. On or about 6 June 2018, Detective Reid applied for, received, and executed two search warrants permitting a search of (1) Defendant and his vehicle or vehicle(s) in his control, and (2) Defendant's residence. The warrants authorized law enforcement to, in part, search for:

> 6. Text files containing information pertaining to the interest in child pornography or sexual activity with children and/or pertaining to the production, trafficking in, or possession of child pornography.
>
> 7. Correspondence…. Pertaining to the trafficking in, production of, or possession of visual depictions of minors engaged in sexually explicit conduct.
>
> 8. Correspondence…. Soliciting minors to engage in sexually explicit conduct for the purposes of committing an unlawful sex act and/or producing child pornography.
>
> 10. Names and addresses of minors visually depicted while engaged in sexually explicit conduct.
>
> 12. Any book, . . ., or any other material that contains an

image of child pornography.

13. Any and all documents and records pertaining to the purchase of any child pornography.

14. Notations of any password that may control access to a computer operating system or individual computer files. Evidence of payment for child pornography[.][1]

We first note we need not discuss the vehicle search. As Defendant states in his brief and confirmed by the record, "[h]e only filed a motion to suppress in file number 18-CRS-50936, in which he ultimately pled guilty to one count of indecent liberties. . . . Accordingly, [Defendant's] appeal and appellate brief focuses exclusively on file number 18-CRS-50936." The indecent liberties with a child charge stems from the search conducted in Defendant's residence. Accordingly, we direct our focus to that search.

In the search of Defendant's residence, State Bureau of Investigation Special Agent Chris Chambliss assisted in the execution of the search warrant and found four notebooks. Special Agent Chambliss was "[p]rimarily looking for passcodes, or keywords, or something that would potentially show something along those lines, something that would further the investigation" during his initial review of the notebooks. One of the notebooks included a reference to Defendant's commission of

---

[1] The order skipped numbers 9 and 11.

a hands-on sexual offense involving a minor. Thereafter, Detective Reid applied for two additional search warrants and identified the victim of the hands-on offense. Ultimately, Defendant was indicted for (1) ten counts of second-degree sexual exploitation of a minor and (2) two counts of first-degree sexual offense.

On or about 28 June 2019, Defendant filed a (1) motion to suppress "evidence seized in excess of the scope" of the initial search warrants and (2) motion to quash the third and fourth warrants and suppress "any evidence seized thereby[.]" On or about 4 March 2020, the trial court entered an order denying Defendant's motion to suppress and motion to quash. On or about 10 November 2021, Defendant entered a guilty plea on ten counts of second-degree sexual exploitation of a minor and one count of indecent liberties with a child reserving his right to appeal the order denying his motion to suppress and motion to quash.

## II.  Motion to Suppress

Defendant contends (1) "[m]any of the trial court's findings of fact are not actually factual findings or are not supported by competent evidence" and (2) "search of [his notebooks] went beyond the scope of the search warrants[,]" so the trial court should have granted his motion to suppress.

## A.  Standard of Review

As our Supreme Court has explained:

> In evaluating the denial of a motion to suppress, the reviewing court must determine whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. The trial court's findings of fact on a motion to suppress are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.

*State v. Williams*, 366 N.C. 110, 114, 726 S.E.2d 161, 165 (2012) (citations and quotation marks omitted). When "the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

Appellate courts "accord[] great deference to the trial court" when reviewing findings of fact because the trial court "is entrusted with the duty to hear testimony, weigh [the evidence,] and resolve any conflicts in the evidence[.]" *Williams*, 366 N.C. at 114, 726 S.E.2d at 165 (citation and quotation marks omitted). Our deference to the trial court reflects that the trial court "sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth. The appellate court is much less favored because it sees only a cold, written record." *State v. Cooke*, 306 N.C. 132, 134-35, 291 S.E.2d 618, 620 (1982) (citation and quotation marks omitted). In contrast, "[c]onclusions of law are reviewed *de novo* and are subject to full review." *Biber*, 365 N.C. at 168, 712 S.E.2d at 878. "Under a *de novo* review, the court considers the

matter anew and freely substitutes its own judgment for that of the lower tribunal."

*Id.* (citations and quotation marks omitted).

## B. Challenged Findings of Fact

Defendant challenges many findings of fact and grouped his arguments into four categories based upon the nature of the challenge: (1) finding 17 "is not supported by competent evidence[;]" (2) findings 24-26 "are, in whole or in part, conclusions of law and/or are not supported by competent evidence[;]" (3) findings 20, 21, and 27 are not findings of fact but conclusions of law; and (4) findings 19 and 23 are "not factual findings" but are instead the trial court's interpretations of Defendant's argument or of caselaw. (Capitalization altered.) We review each category in turn.

### 1. *Finding 17*

Finding 17 states:

> The court finds from the credible testimony that paper writings including notebooks often carry information regarding child pornography including passcodes or keywords, correspondence, communication with individuals involved in child pornography, documentation of episodes of child pornography and other information that will further the investigation into child pornography.

Defendant asserts finding 17 is "not supported by competent evidence" because it

> overstates the evidence in two ways. First, Agents Chambliss and Anderson did not testify that law enforcement "often" found information regarding child pornography in notebooks. . . Second, neither testified that he had ever discovered handwritten records that included correspondence or communications with individuals involved in child pornography or documentation of episodes of child pornography.

We disagree.

Defendant engages in a hyper-technical, word-for-word interpretation of the testimonies. First, Defendant mentions only Special Agent Chambliss and Special Agent Nathan Anderson, but the trial court did not name these two specific agents in finding 17. Another witness, Detective Reid, testified paper writings in this type of investigation "commonly" include relevant items such as passcodes or passwords. "Commonly" is the adverbial version of the word "common" meaning "occurring or appearing frequently[.]" Merriam-Webster's Collegiate Dictionary 250 (11th ed. 2003). Similarly, the word "often" means "many times" or "frequently[.]" *Id.* at 862 (capitalization altered). Thus, the word "commonly[,]" at least as used in this testimony, is a functional equivalent of the word "often" as used in finding 17.

Defendant also argues that "neither [Special Agents Chambliss nor Anderson] testified that [they] had ever discovered handwritten records that included correspondence or communications with individuals involved in child pornography or

documentation of episodes of child pornography[;]" finding of fact 17 does not state those two specific agents so testified. Finding of fact 17 simply finds "*from the credible testimony* that paper writings . . . often carry information regarding child pornography. . . [,]" not which specific law enforcement officers testified about this information. Finding No. 17 is supported by the evidence.

### 2. *Findings 24-26*

Findings 24-26 state:

> 24. A cursory reading of the notebook found in the Xterra, Exhibit D-1, although not revealing any passcodes, did reveal incriminating statements made by [D]efendant as to his possession of child pornography which was the crime providing for the search and was subject to seizure.

> 25. During a cursory reading of one of the notebooks found in the residence, Exhibit D-2, although not revealing any passcodes, it did reveal incriminating statements made by [D]efendant relative to a new crime, the crime of indecent liberties, was subject to seizure, and was subsequently searched in detail pursuant to the June 11, 2018 search warrant. "Courts have never held that a search is overbroad merely because it results in additional charges." *United States v. Phillips,* 588 F.3d 218 (4th Cir. 2009).

> 26. The seizure of the notebooks both from the Xterra and the residence was within the scope of the June 6, 2018 search warrants and the scope of the search authorized by the warrants included the authority to cursorily view each notebook.

Here, Defendant contends that (1) portions of findings 24-26 contain conclusions of

law, and (2) portions of findings 24-26 are not supported by competent evidence.

As to the label applied to "findings" 24-26, it is well-established that the labels assigned by a trial court do not dictate the standard of review for this Court. *State v. Johnson,* 246 N.C. App. 677, 683, 783 S.E.2d 753, 758-59 (2016) ("[W]e do not base our review of findings of fact and conclusions of law on the label in the order, but rather, on the substance of the finding or conclusion. *See State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009) ("Although labeled findings of fact, these quoted findings mingle findings of fact and conclusions of law. While we give appropriate deference to the portions of Findings No. 37 and 39 that are findings of fact, we review *de novo* the portions of those findings that are conclusions of law." (ellipses omitted)). Thus, no matter how the trial court classified findings 24-26, we will "give appropriate deference to the portions . . . that are findings of fact, [and] we review *de novo* the portions of those findings that are conclusions of law." *Id.*

As to whether there was competent evidence to support the factual portions of these findings, Defendant makes a two-sentence argument:

> To the extent this Court views the trial court characterization of law enforcement's actions as a "cursory reading" or "cursorily view[ing]" of the notebooks as factual findings, they are not supported by competent evidence. As noted above, Agents Colvard and Chambliss read beyond the 30th pages of the two journals in question despite the fact that they were plainly substance abuse recovery

> journals. . . . This speaks to an in depth reading of the
> journals, not a skimming of their contents.

Again, Defendant only challenges the hands-on sexual offense; Defendant does not challenge the child pornography charges which were related to the initial warrants. While Defendant does challenge the above findings in his brief and these findings include references to the search of Defendant's car, his motion to suppress and appeal is limited to the hands-on offense, and Defendant concedes "[h]e filed a motion to suppress in file number 18-CRS-50936, in which he ultimately pled guilty to one count of indecent liberties, however. Accordingly, [Defendant]'s appeal and appellate brief focuses exclusively on file number 18-CRS-50936."

The evidence supporting the indecent liberties charge was based upon one of the notebooks found in Defendant's home; thus, we only review Special Agent Chambliss's actions since he was the person who located and reviewed the notebook which contained the reference to the hands-on offense. The notebook found in the car referenced Defendant's activities regarding child pornography, but the notebook from Defendant's car did not contain evidence regarding the hands-on offense. As Defendant only challenged the hands-on offense at his motion to suppress hearing and on appeal, we need not discuss the notebook from Defendant's car.

Special Agent Chambliss testified that in looking through the notebooks for

"passcodes" he discovered the passage regarding a hands-on offense, but he did not read the notebooks "word for word[.]" Special Agent Chambliss's testimony does not say he "read beyond the 30th pages" as he was not reading "word for word" but was looking through the journal for passcodes "when [he] noticed . . . [the notebook] had language that was consistent with somebody talking about committing hands-on offenses." Thereafter, rather than going through the rest of the notebook continuing to look for passcodes, as he could have done under the warrant, Special Agent Chambliss informed other officers and they immediately applied for an additional warrant specifically applicable to the notebook. Defendant fails to direct us to any testimony which supports "an in depth reading of the [notebooks]" during the execution of the initial search warrant.

We further note that Defendant's argument the notebooks were "plainly substance abuse recovery journals" does not change our analysis. The search warrant authorized the officers to look for:

> 6. Text files containing information pertaining to the interest in child pornography or sexual activity with children and/or pertaining to the production, trafficking in, or possession of child pornography.
>
> 7. Correspondence…. Pertaining to the trafficking in, production of, or possession of visual depictions of minors engaged in sexually explicit conduct.

8. Correspondence…. Soliciting minors to engage in sexually explicit conduct for the purposes of committing an unlawful sex act and/or producing child pornography.

10. Names and addresses of minors visually depicted while engaged in sexually explicit conduct.

12. Any book, …, or any other material that contains an image of child pornography.

13. Any and all documents and records pertaining to the purchase of any child pornography.

14. Notations of any password that may control access to a computer operating system or individual computer files. Evidence of payment for child pornography[.]

This sort of information could easily be kept in a notebook such as the ones the officers found in Defendant's home. As the Second Circuit persuasively recognized in *Riley*,

> [i]t is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."

*U.S. v. Riley*, 906 F.2d 841, 845 (1990).

Even if the notebook was "plainly a substance abuse [notebook]," the apparent topic of the notebook does not shield it from a cursory review in accord with the search warrant. Just as "few people keep documents of their criminal transactions in a folder

marked 'drug records[,]'" few people keep passwords or other information regarding their child pornography in a notebook marked "child pornography records." *Id.* Someone who records potentially incriminating information would logically seek to keep it in a place where it is not obvious or easy to find.

In opening the notebook and looking for "passcodes[,]" Special Agent Chambliss discovered the hands-on offense. There is no dispute that the search warrant allowed Special Agent Chambliss to seize and inspect the notebook to look for passcodes, potential correspondence involving child pornography, names and addresses of potential victims, and other potentially written information as listed above. It is entirely reasonable to assume a written spiral-bound notebook with hand-written notations might include information on a myriad of topics, including child pornography. Defendant cites to no law, nor have we found any, requiring law enforcement officers to limit their search for information or documents as authorized by a valid search warrant in a manner dictated by a defendant's own labels or characterization of a document. A passcode such as Special Agent Chambliss was looking for could be written in any sort of document or book, and a defendant would most likely not want to make this sort of information easy for others to find and identify. Accordingly, these findings are supported by competent evidence.

### 3. *Findings 20, 21, and 27*

Defendant next contends findings 20, 21, and 27 are not findings of fact but are actually conclusions of law and "therefore, are reviewed de novo." Defendant makes no other challenge to these findings. The State agrees with Defendant's argument. Findings 20, 21, and 27 state:

> 20. A "commonsense and realistic" approach to the interpretation of the search warrants clearly indicates that the seizure of the notebooks was well within the purview of and authorized by the June 6, 2018 search warrants.
>
> 21. Even assuming *arguendo* that paragraphs 6, 7, 8, 10 and 12 did not authorize the seizure and cursory search of the notebooks, paragraphs 13 and 14 clearly did.
>
> . . . .
>
> 27. That the June 6, 2018, June 11, 2018 and June 26, 2018 search warrants were each based upon probable cause and were not issued or executed in violation of the Constitutional rights of the defendant and all items seized and searched thereby were seized and searched legally.

We again note, we will review "findings" under the appropriate standard depending on their actual classification, not the label given by the trial court. *State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009). We agree these are conclusions of law, and we review them below accordingly.

### 4. *Findings 19 and 23*

Findings 19 and 23 state:

- 14 -

19. [D]efendant argues that the June 6, 2018 search warrants should be interpreted in a "hypertechnical" manner. That is, since the focus of the search warrants dealt with computer, digital, photographic and video evidence that it cannot be expanded to include written materials such as the notebooks seized.

. . . .

23. Each of the officers could conduct "some cursory reading" of the notebooks discovered during the course of the searches to determine their relevance to the crime providing for the search. <u>United States v. Crouch</u>, 648 F.2d 932, 933-34 (4th Cir.), cert. denied, 454 U.S. 952, 70 L. Ed. 2d 259, 102 S. Ct. 491 (1981).

Finally, as to the findings of fact, Defendant asserts findings 19 and 23 are "not factual findings" nor "conclusions of law" because they represent the trial court's "characterization" of Defendant's argument or of caselaw. The State, and we, agree. Nonetheless, these "findings" do not affect this analysis since neither "finding" is required to support the trial court's conclusions of law because neither "finding" actually finds facts upon which the trial court relied in making its conclusions. Thus, we will not review them further.

## C. Scope of Search Warrants

Beyond Defendant's challenges to the findings of fact, he argues law enforcement's search of his notebooks "went beyond the scope of the search warrants." The crux of Defendant's argument is

- 15 -

[W]hen conducting searches of a person's papers, officers "must take care to assure that they are conducted in a manner that minimizes unwarranted instructions upon privacy." *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976). This reflects not only an aversion to "general warrant[s] to rummage and seize at will[,]" *Crabtree*, 126 N.C. App. at 735, 487 S.E.2d at 578, but also due consideration of the particular privacy interests at issue, *see* 6 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (2020) [hereinafter "LaFave"]. Consistent with the textual constitutional commitment to their protection, U.S. Const. amend. IV, searching a person's papers in executing a warrant raises "grave dangers[,]" *Andresen*, 427 U.S. at 482 n.11. Given the wariness of general warrants and the corresponding commitment to protecting privacy rights, especially relating to sensitive materials, *id.*, law enforcement may only search papers for "as long and as intensely as is reasonable to find the things described in the warrant[.]" LaFave § 4.6(a).

Law enforcement is accordingly limited in its examination of papers in executing a warrant. They are, of course, permitted to search and seize evidence specified by the warrant. *Crabtree*, 126 N.C. App. at 735, 487 S.E.2d at 578. Law enforcement may also seize evidence in plain view, *Coolidge*, 403 U.S. at 465, including materials that are "clearly and immediately incriminating[,]" *Crouch*, 648 F.2d at 933. And courts recognize "that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among the papers to be seized." *Andresen*, 427 U.S. at 482 n.11. But a cursory examination is a surface-level glance at materials, *Cursory*, WEBSTER'S DICTIONARY (2nd ed. 1975) (defining cursory as "hasty; slight; superficial; careless; without close attention"); *see also Arizona v. Hicks*, 480 U.S. 321, 328 (1987) (defining cursory inspections in a similarly narrow fashion); this makes sense given the weighty privacy

> interests an individual has in his or her papers. Anything more intensive touching upon materials beyond the warrant authorization constitutes an impermissible search. *See Hicks*, 480 U.S. at 324-25, 328-29.

Defendant contends the journals were not "clearly and immediately incriminating[,]" but they could be immediately identified as "sensitive" since they were substance abuse recovery journals and thus presented "'grave dangers' of unwarranted invasion of privacy[.]"  Defendant argues that "Agents Colvard and Chambliss read, page by page, more than 30 journal pages" despite the sensitive nature of the journals and this examination was unconstitutional.

According to Defendant, the agents were allowed to cursorily look in the notebook but immediately upon discovering it was a substance abuse journal, they should have looked no further, not even for passwords or passcodes.  Again, Defendant is essentially arguing, with no legal support, that law enforcement officers must trust and rely upon a defendant's label on documents, particularly since the notebooks were "substance abuse recovery journals."  But the evidence and findings in this case do not support Defendant's assertions.

The initial search warrant allowed for the search of Defendant's residence including, "[a]ny and all documents and records pertaining to the purchase of any child pornography" and "notations of any password that may control access" to a

computer. Special Agent Chambliss testified he was in Defendant's residence looking at a document for notations of a password when he found the portion of the journal suggesting a hand-on sexual offense, and he then sought and obtained another search warrant. The State presented extensive testimony regarding how passcodes to access online child pornography are often written on paper. Special Agent Chambliss testified that while he was specifically searching for "passcodes" page by page, he was not reading every word on the pages, but instead flipping through looking for information relevant to his search, and in that search he happened to see evidence of a hands-on crime. Special Agent Chambliss immediately stopped looking at the notebook, which he had not been reading "word for word," spoke with a supervisor, and another warrant was obtained. Defendant's entire argument is premised upon the manner in which Special Agent Chambliss looked at the notebook. But the evidence does not support Defendant's claim that Special Agent Chambliss carefully read every word for the first 30 pages of the notebook and thus would have known the notebook was a substance abuse journal as Defendant contends.

In summary, the search was conducted in accordance with a properly issued search warrant to search Defendant's home for "[a]ny and all documents and records pertaining to the purchase of any child pornography" and "notations of any password that may control access" to a computer. During execution of the warrant an officer

looking for a "passcode" happened to find evidence of another crime, and then sought another search warrant.  The trial court did not err in denying Defendant's motion to suppress or quash.  This argument is overruled.

### III.    Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges HAMPSON and GORE concur.